817 So.2d 1107 (2002)
Lajuana B. PETRE
v.
STATE of Louisiana, through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
Vincent Petre
v.
State of Louisiana, through the Department of Transportation and Development.
No. 2001-C-0876.
Supreme Court of Louisiana.
April 3, 2002.
Rehearing Denied May 24, 2002.
*1108 Richard P. Ieyoub, Attorney General, John H. Ayres, III, John C. Young, Counsel for Applicant.
Wilbert J. Saucier, Jr., Terry G. Aubin, Henry H. Lemoine, Jr., Field V. Gremillion, III, Counsel for Respondent.
CALOGERO, Chief Justice.[*]
We granted this writ to consider whether, because of unreasonably dangerous defects in La. Hwy. 107, the Department of Transportation and Development (DOTD) can be held liable for damages sustained in a single car accident, when the vehicle driver's intoxication was a major cause of the accident. We find that DOTD can be held liable in part for the ensuing claims. Accordingly, there was no error in the decisions of the lower courts, and we affirm the judgments.

Facts and Procedural History
The matter before us arises out of a single automobile accident that occurred at 9:20 p.m. on September 1, 1992. Lajuana Petre was traveling with her ten-year-old daughter, Shauna, on La. Hwy. 107. The two had visited a friend of Ms. Petre's in the Pineville area from approximately 6:00 p.m. to 8:30 p.m., and Ms. Petre testified that during the visit, she consumed three drinks. The two then drove to the Kingsville Burger King, where Shauna ate a hamburger and french fries, and Ms. Petre did not eat. They then proceeded on a twenty mile trip to visit another friend who lived on La. Hwy. 107 in Avoyelles Parish.
While traveling on La. Hwy. 107, Ms. Petre inadvertently passed her friend's driveway, traveling around two curves, and turned around in the parking lot of an abandoned store. She then proceeded back towards her friend's house and encountered a vehicle that she thought might be driven by the friend. While glancing to the left at the other vehicle and traveling at a speed of forty to forty-five miles per hour, the right side wheels of her car left the paved surface. According to Ms. Petre's testimony, she attempted to turn the wheels to the left to reenter the highway without applying the brakes, and possibly by accelerating, but she traveled along the ditch a short distance until she hit a culvert. A driveway running perpendicular to the highway and ditch acted as a launching ramp, causing her vehicle to become airborne and travel an additional 122 feet. The vehicle bounced off of two trees, *1109 overturned, and ultimately came to rest on a stump. Ms. Petre suffered physical injuries and was rendered unconscious for two days. Shauna suffered numerous serious injuries, which resulted in her untimely death.
State Trooper Nathaniel Beaubouef arrived at the accident scene and took measurements to determine the vehicle's path. He found no marks on the surface of the highway and concluded that the vehicle was under control when it left the highway. He concluded that Ms. Petre's inattentiveness caused the accident. He issued Ms. Petre a citation for careless operation of a vehicle in violation of La. Rev.Stat. 32:58. Nearly two hours after the accident, the hospital obtained a blood sample from Ms. Petre that yielded a blood-alcohol reading of 0.247 percent based on grams of alcohol per 100 cubic centimeters of blood. Ms. Petre ultimately pled guilty to vehicular homicide of her daughter, a violation of La.Rev.Stat. 14:32.1. In the prior twenty-four months, she had been arrested for and presumably convicted of two DWI's.[1]
La. Hwy. 107 is a two-lane, asphalt-surfaced highway that became a part of Louisiana's highway system in the 1920s. It was a gravel roadway until it received an asphalt surface in 1952. In 1987, the travel lanes of the highway were widened at the expense of the shoulder. At the time of the accident, the area in which the accident occurred was made up of two curves in the roadway and was marked in both directions by yellow diamond-shaped signs illustrating the configuration of the curve and advising motorists not to exceed forty miles per hour while traveling through the curves. At the time of the accident, no other warning signs were present.
However, between 1985 and 1988, DOTD had initiated a "substandard road program." During that time, district administrators were instructed to place yellow diamond-shaped warning signs reading "DRIVE CAREFULLY SUBSTANDARD ROADWAY" on the most dangerous ten percent of the roads in their districts, and the speed limit in those areas was reduced to forty-five miles per hour. Choosing the roads to be signed was left to the discretion of the district administrators, and the area of this accident was signed in accordance with this program. In 1990, the program was abandoned, and by the time of the accident, the "substandard roadway" sign had been removed, the speed limit was again set at fifty-five miles per hour.
Ms. Petre filed suit against DOTD for her injuries and for the wrongful death of her daughter. Vincent Petre, Shauna's father and Ms. Petre's former husband, filed suit against Ms. Petre, the vehicle insurer Louisiana Indemnity Company,[2] and DOTD for the wrongful death of his daughter. The actions were consolidated for trial. Prior to trial, Mr. Petre settled with the insurance company, which was then dismissed from the lawsuit.
Following a bench trial, the district court found that Ms. Petre and DOTD were equally at fault in causing the accident and provided written reasons for the judgment. Mr. Petre was awarded $259,120.95 in a judgment against both Ms. Petre and DOTD.[3] Ms. Petre was awarded by judgment against DOTD approximately $279,715.30. The trial judge had found that she suffered damages in the amount *1110 of $559,430.59, but reduced those damages by 50%, the portion of fault allocated to her.[4]
With regard to DOTD's liability, the district court considered La. Civ.Code art. 2317,[5] which provides for strict liability for damages caused by things in one's custody. Generally, the difference between strict liability and negligence is that under strict liability, the plaintiff is relieved of proving that the owner or custodian of the thing that caused the damages knew or should have known of the risk involved. Kent v. Gulf States Utilities Co., 418 So.2d 493, 497 (La.1982). However, the district court recognized that La.Rev. Stat. 9:2800 limited the liability of public entities for the damage caused by things in their custody, and the public entity will only be held liable when it had actual or constructive notice of the defect and a reasonable opportunity to remedy the defect yet failed to do so.[6] Considering the La.Rev.Stat. 9:2800 guidelines, and citing Graves v. Page, 96-2201 (La.11/7/97), 703 So.2d 566, 571, the district court acknowledged that DOTD's duty to the plaintiff is the same under La. Civ.Code art. 2317 limited by La.Rev.Stat. 9:2800 as under La. Civ.Code art. 2315. As a result, the district court found that plaintiff must meet the following requirements to establish a breach of DOTD's duty: 1) defendant has care and custody over the thing which caused the damage; 2) the thing that caused the damage was defective and created an unreasonable risk of harm to others; 3) the defendant had actual or constructive knowledge of the defect or risk of harm and failed to take corrective actions within a reasonable time; and 4) the defective thing caused the injury to the plaintiff.
The district court found that considering the evidence as a whole, the plaintiffs met their burden of proving each of these four elements. First, regarding custody, the highway in question was within the control and custody of DOTD, which has constructed, maintained, and inspected it. Second, regarding the defectiveness of the road, plaintiff presented an expert in highway design who testified that the highway's shoulders were defective as to both slope and width. Furthermore, regarding DOTD's knowledge of the defect, plaintiffs expert testified that he had previously given testimony relating to the defectiveness of this very curve in an earlier case arising from a 1988 accident that had occurred *1111 there. Moreover, plaintiffs produced the evidence of another witness who testified that, while he was employed by the state as an expert witness in the case involving the 1988 accident, he reached the same conclusion: that the curve in question was defective and dangerous. Finally, regarding causation, plaintiff's expert testified that these defects prevented Ms. Petre from recovering once her vehicle left the road, and had the shoulder been properly designed and constructed, Ms. Petre would have been able to recover control of the vehicle and reenter the road. The district court found that along with the plaintiff's intoxication, the defective curvature and shoulder of the highway as well as the absence of chevrons delineating the curve were all substantial contributors in bringing about the accident that resulted in Ms. Petre's injuries and Shauna's death.
On appeal, the Third Circuit affirmed the district court's decision. Petre v. State, Through the Dept. of Transp. And Dev., 00-00545 (La.App. 3 Cir. 12/29/00), 775 So.2d 1252. Recognizing that it could only set aside the trial court's finding of fact if it found such findings were manifestly erroneous or clearly wrong, the court found a reasonable factual basis to support the district court's findings that both DOTD and Ms. Petre caused the accident. Furthermore, the court of appeal found that Ms. Petre's intoxication should not prevent her proportionate recovery in light of DOTD's fault.

Law and Analysis
Because we were concerned about this intoxicated driver recovering from the state, we granted DOTD's writ application to review both lower courts' decisions, each of which were favorable to the plaintiffs. Petre v. State, Through Dept. Of Transp. And Development, 01-0876 (La.6/01/01), 793 So.2d 171. Considering the facts and procedural posture of the case, we find that our law does not allow us to prohibit Ms. Petre from recovering in part from DOTD because she was intoxicated at the time of the accident.
In an effort to convince this court to reverse the judgment of the district court and court of appeal, DOTD presents three arguments for our consideration. First, DOTD argues that no unreasonably dangerous defect in the road existed, and that if any unreasonably dangerous defect did exist such was not a substantial factor in bringing about the accident. Second, DOTD asks this court to find that because the court of appeal found that a major reconstruction of the highway had been performed, the court of appeal applied a faulty standard in determining whether the highway was unreasonably dangerous. Finally, DOTD argues that the lower courts erred in apportioning fault because Ms. Petre was a highly intoxicated driver who lost control of her vehicle and struck a clearly visible object. We will address each of these arguments in turn.

Unreasonably Dangerous Defect
Whether the condition of a road is unreasonably dangerous is a question of fact and should only be reversed if it is manifestly erroneous or clearly wrong. Ledoux v. Dep't of Transp. And Dev., 98-0024, p. 3 (La.9/18/98), 719 So.2d 43, 44-45. When applying a manifest error or clearly wrong standard, even if an appellate court may feel that its own evaluations and inferences are as reasonable as those of the district court, it should not disturb the findings of the district court. Canter v. Koehring, Co., 283 So.2d 716, 724 (La. 1973). In this case, the lower courts found an unreasonably dangerous defect in the road that was a substantial factor in causing plaintiffs' damages, and, as a result, DOTD was liable to plaintiffs. Petre, 775 So.2d at 1264. We find, as did the court of appeal, that this determination of the district court was not manifestly erroneous or clearly wrong.
*1112 DOTD argues that the lower courts erred in holding that any unreasonably dangerous defect in the highway, specifically the width of the shoulder, the steepness of the adjacent ditch, and the failure to place chevrons marking the curve, were substantial factors in bringing about the accident. DOTD points out that Ms. Petre testified that she did not leave the road as a result of a defect in the road, but rather because she lost her concentration. Furthermore, according to DOTD, the testimony demonstrates that regardless of the slope of the ditch, plaintiff ran off of the road too close to the driveway and, therefore, did not have enough time to recover. DOTD argues that as a result, the slope of the ditch played no part in causing the accident. DOTD additionally argues that the narrow shoulders did not render the highway unreasonably dangerous because as explained in Myers v. State Farm Mutual Automobile Ins. Co., 493 So.2d 1170 (La.1986), highway safety was increased by widening the travel lanes at the expense of the shoulder. Id. at 1173.
On the other hand, in spite of the fact that lane widening improved the road, the reduction in the shoulder width to a severe degree creates a different and independent risk that a motorist who travels onto or partially onto the shoulder for any reason, whether as a result of inattentiveness or negligence, will be unable to recover in time to avoid an accident. DOTD's duty to maintain the road and shoulder encompasses the risk that a motorist may travel onto or partially onto the shoulder. Graves v. Page, 96-2201 (La.11/7/97), 703 So.2d 566, 572. In this case, the shoulder consisted of one and one-half feet of usable surface area before it descended into a ditch. Mr. Evans, an expert witness who inspected the accident scene in February of 1993, testified that the ditch adjacent to the road varied in slope from 4:1 to 3:1. He stated that a 3:1 slope is not recoverable by a vehicle traveling on it, and a 4:1 slope is barely so. Mr. Evans testified that in this situation, once a motorist left the road, even sober, she would not have been able to recover and reenter the road. Considering Mr. Evans's testimony, we find that the record supports the lower courts' findings that the width of the shoulder along with the slope of the adjacent ditch was a substantial factor in causing the damages. Regardless of whether another fact finder might have concluded differently, because the finding is supported by the record and is not unreasonable overall, we cannot say it is manifestly erroneous.

No Major Reconstruction of the Road
Despite a finding that an unreasonably dangerous defect in the road was a substantial factor in contributing to the accident, DOTD argues that it did not have the duty to widen the shoulder of the road because it has no duty to bring old highways up to modern standards, citing Myers, 493 So.2d 1170; Holloway v. State, Through Dept of Transp. and Dev., 562 So.2d 1033 (La.App. 3d Cir.1990) writ denied, 567 So.2d 102 (La.1990). DOTD correctly argues that such a duty does not exist unless a new construction or major reconstruction of the highway has taken place. Ledoux v. State, Through Dept. of Transp. and Dev., 98-0024 (La.9/18/98), 719 So.2d 43, 46. Presumably relying on the court of appeal's recognition that "Mr. Evans concluded that the highway shoulder did not meet the state design specifications in effect in 1952 when the highway was constructed," Petre, 775 So.2d at 1261, and noting that the highway was built in the 1920's but asphalted in 1952, DOTD argues that the court of appeal erred in finding that the hard-surfacing of the road was a major reconstruction that gave rise to an obligation to update the road to meet 1952 standards.
*1113 This court decided a factually similar case in Aucoin v. State Through the Dept. of Transp. and Dev., 97-1938 (La.4/24/98), 712 So.2d 62. In Aucoin, plaintiff was proceeding on Greenwell Springs Road, Highway 37, when she swerved to avoid hitting a dog. As she swerved, the vehicle's wheels traveled past the white fog line onto a one-foot-wide shoulder and down a steeply-sloped ditch. Her vehicle collided with a tree that was growing on the back slope of the ditch. In determining whether the trial court was manifestly erroneous in holding DOTD liable for the unreasonably dangerous condition of the road, we reaffirmed our decision in Myers, supra. finding that DOTD's failure to reconstruct a state highway to conform with modern standards did not establish the existence of a hazardous defect. However, we did not find that Myers shielded DOTD from liability, simply because it has no duty to update roads to present standards. We found that while the failure to adhere to AASHTO standards may not alone attach liability, DOTD's conformance to those standards or not is a relevant factor in determining whether the roadway is unreasonably dangerous. Aucoin, 712 So.2d at 66 (citing Dill v. DOTD, 545 So.2d 994 (La.1989)). Based on this, in Aucoin, we affirmed the district court's findings that the slope of the ditch, the narrowness of the shoulders, and the limited horizontal clearance contributed to the unreasonably dangerous condition of the road, and as a result, DOTD was held liable to the plaintiff.
We disagree with DOTD's contention that the court of appeal's decision in this case stands for the proposition that the hard-surfacing of a road constitutes a major reconstruction that gives rise to a duty to conform the road to the minimum requirements in place at the time. Presumably, in considering whether the shoulder was unreasonably dangerous, the court of appeal was simply describing Mr. Evans's position that the shoulder did not meet the minimum standards in place in 1952, so as to emphasize the defective condition of the road. We find in accordance with Aucoin, even without a duty to update the road in question to conform to current design standards or even the design standards in place in 1952, DOTD is not shielded from liability for all unreasonably dangerous defects in the road. Furthermore, the court of appeal's use of Mr. Evans's observation that the shoulder did not conform to the minimum design standards in place in 1952, at the time the road was hard-surfaced, merely provided persuasive evidence that the shoulder of the road was defective. The court of appeal's use of this testimony does not stand for the proposition that the hard-surfacing of the road imposed a duty on DOTD to update the entire road to meet the minimum design standards at the time. Therefore, regardless of whether DOTD had a duty to update the road, the court of appeal did not err in holding DOTD partially liable to plaintiff for the unreasonably dangerous shoulder, the unreasonably dangerous adjacent slope, and absence of chevrons.

Apportionment of Fault
DOTD further asserts that it should not be held liable to the plaintiffs because the driver was intoxicated, and that plaintiff Ms. Petre should not recover, irrespective of any unreasonably dangerous condition of the road. Citing Cormier v. Comeaux, 98-2378 (La.7/7/99), 748 So.2d 1123, DOTD argues that its duty to maintain safe highways does not encompass the risk that an intoxicated driver will drive off of the road and strike a clearly visible obstacle.[7] In posing such an argument, *1114 DOTD asks this court to create a rule that would disallow an intoxicated driver's recovery from DOTD, even when an unreasonably dangerous defect in the road is a substantial factor in contributing to an accident. We find it improper to create such a rule absent legislative direction, and agree with the court of appeal's treatment of the issue:
While no one would take issue with the fact that Ms. Petre's unacceptable and illegal actions in driving while intoxicated should be weighed heavily against her in considering the extent of DOTD's duty to her, intoxication alone is not enough to automatically prevent her from recovering for DOTD's fault. It is merely a factor to consider in Louisiana's comparative negligence scheme. The trial court clearly recognized this and addressed this issue directly in its reasons for judgment by stating that the courts of this state have "not relied solely upon blood tests to close the door and [charge] the intoxicated driver with sole fault in the accident. Rather they look to other credible testimony which determines the effect of alcohol upon the ability of the driver to operate the vehicle and the extent of the impairment."
Petre, 775 So.2d at 1263. (Citations omitted). We find that the trial court and court of appeal properly considered Ms. Petre's intoxication in assessing her comparative fault.
La. Civ.Code art. 2323(A), which sets out our comparative negligence scheme, explains the extent to which DOTD may be held liable to the plaintiffs:
In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
La. Civ.Code art. 2323(A).
Whether or not we agree with the equal allocation of fault between Ms. Petre and DOTD, we find it difficult, if not impossible, to conclude that the district court's reasoning was manifestly erroneous. In analyzing the allocation of fault of the parties, the court of appeal correctly applied the manifest error standard. Petre, 775 So.2d at 1265. Furthermore, the court of appeal was correct in applying the Watson factors, which include the following: 1) whether the conduct results from inadvertence or involved an awareness of the danger; 2) how great a risk was created by the conduct; 3) the significance of what was sought by the conduct; 4) the *1115 capacities of the actor, whether superior or inferior; and 5) any extenuating circumstances that might require the actor to proceed in haste, without proper thought. In finding DOTD 50% liable for the damages sustained as a result of the accident, the court of appeal was especially persuaded by the fact that for four years DOTD was aware of the danger posed by the road but failed to remedy it. The site of the accident had been analyzed after a previous accident that occurred in the same curve, and the road had been selected as a substandard road during the "substandard road program" in effect from 1985 to 1988. Furthermore, the district court and court of appeal recognized that once Ms. Petre left the paved surface, her intoxication was no longer a factor in causing the accident. Accordingly, we find that the court of appeal did not err in affirming the equal allocation of fault on the part of DOTD and Ms. Petre.
We note that our decision in this case is in line with Campbell v. Louisiana Dept. of Transp. & Dev., 94-1052 (La.1/17/95), 648 So.2d 898. In Campbell, the driver fell asleep while operating a vehicle and struck a bridge abutment. The district court found that the driver was 25% at fault and DOTD was 75% at fault for failing to install guardrails on the bridge, even though the accident was initially caused by the driver's falling asleep. The court of appeal reduced DOTD's liability to only 10%, and this court reversed, reinstating the district court's apportionment of 25%. We found that "[the driver's] negligence set the course for an accident to happen, but the harm or injuries... were a direct result of the impact with the bridge abutment." Campbell, 648 So.2d at 902, 903. Similarly, in the instant case, although Ms. Petre's intoxication or inadvertence caused her to drive off the road, according to Mr. Evans's testimony it was the unreasonably dangerous shoulder and slope of the adjacent ditch that prevented her from reentering the road and which caused the vehicle to become airborne and overturn. Therefore, an equal allocation of fault to her and DOTD as found by the lower courts is not manifestly erroneous.
As stated earlier, we granted this writ because we were concerned about allowing an intoxicated driver who was involved in a single car accident to recover in part damages from the state. However, properly applying the manifest error standard, we will affirm the findings in the two lower courts. The district court was in the best position to evaluate the testimony and evidence, and because its findings were supported by the record and not unreasonable, we do not reverse these findings.

DECREE
For the foregoing reasons, we affirm the judgments of the trial court and the court of appeal.
SHORTESS, Justice ad hoc, assigns additional concurring reasons.
TRAYLOR and VICTORY, JJ., dissents and assigns reasons.
LOBRANO, J., dissents for reasons assigned by TRAYLOR, J.
SHORTESS, Associate Justice Ad Hoc assigns additional concurring reasons.
In addition to all of the reasons set forth by the majority, another egregious factor as noticed by the Third Circuit at page 1256 of Petre v. State ex rel. DOTD, 775 So.2d 1252, is that sometime between 1985 and 1988, DOTD placed a warning sign on LA # 107 at this curve in accordance with its "substandard road program" delineating it a "Substandard Roadway." The public was warned to "Drive Carefully" and the speed limit was reduced because *1116 the DOTD officials felt it fit the "worst type" category of roadways.
Unfortunately for these plaintiffs, the sign was removed without any remedial action before this accident when DOTD abandoned this program in 1990. A trap for the unwary? Perhaps, but certainly another substantial factor contributing to this accident. There is no manifest error hereit is just a difficult case. I agree completely with the majority and add these additional reasons.
TRAYLOR, J., dissenting.[**]
Once again we are faced with "bad facts making bad law." Under the mantra of "manifest error," the majority upholds the lower courts in finding that DOTD was liable in a single vehicle car accident, despite the gross negligence of an intoxicated motorist, because Hwy. 107 contained an unreasonably dangerous condition that caused or was a substantial factor in causing the accident. In doing so, the majority ignores prior decisions by this Court and abdicates an appellate court's obligation on review to make legal determinations regarding whether a defect constitutes an unreasonable risk of harm. Because Hwy. 107 did not contain an unreasonably dangerous condition within the scope of DOTD's legal duty to prudent motorists exercising ordinary care, and the sole cause of the accident was the plaintiff driver's error, I respectfully dissent.
DOTD has a duty to maintain the public roadways, including adjacent shoulders and areas in the DOTD's right-of-way, in a condition that is reasonably safe and does not present an unreasonable risk of harm to the motoring public exercising ordinary care and reasonable prudence. La.Rev. Stat. 48:21(A); Campbell v. State, Through Dep't of Transp. & Dev., 94-1052 (La.1/17/95), 648 So.2d 898, 901-02; Brown, 707 So.2d at 1242; Oster, 582 So.2d at 1289-91. This duty, however, does not render DOTD the guarantor for the safety of all the motoring public or the insurer for all injuries or damages resulting from any risk posed by obstructions on or defects in the roadway or its appurtenances. See Netecke v. State, Through Dep't of Transp. & Dev., 98-1182 (La.10/19/99), 747 So.2d 489, 495; Graves, 703 So.2d at 572. Whether DOTD breached its duty to the public, by knowingly maintaining a defective or unreasonably dangerous roadway, depends on all the facts and circumstances determined on a case by case basis. Campbell, 648 So.2d at 901-02.
However, I disagree that this case is decided simply by deference to "manifest error review." The trial judge may have determined that the road presented a dangerous condition as a finding of fact. The question whether that dangerous condition presented an unreasonable risk of harm is a mixed question of law and fact. See Boykin v. Louisiana Transit Co., Inc., 96-1932 (La.3/4/98), 707 So.2d 1225, 1231. The existence of an unreasonable risk of harm may not be inferred solely from the fact that an accident occurred. See, e.g., Simeon v. John Doe, d/b/a The Sweet Pepper Grill, 618 So.2d 848 (La.1993). As this Court stated in Lasoyne v. Kansas City Southern R.R., 00-2628 (La.4/3/01), 786 So.2d 682:
Further, the fact that an accident occurred because of a vice or defect does not elevate the condition of the thing to that of an unreasonably dangerous defect. The vice or defect must be of such a nature as to constitute a dangerous condition that would be reasonably expected to cause injury to a prudent person *1117 using ordinary care under the circumstances.
Id. at 694 (citations omitted) (emphasis added). With this decision, the majority continues its trend to expand the scope of DOTD's legal duty to include all claimants, beyond those who are merely inattentive, to those who are grossly negligent. In doing so, the rule of law defining DOTD's duty has changed: DOTD must now maintain the public highways in a condition that is reasonably safe for persons exercising neither care nor prudence.
The unreasonable risk of harm criterion is not a simple rule of law with neat, mathematical formulations. Oster, 582 So.2d at 1289. In attempting to define the test, this Court has previously described the unreasonable risk of harm criterion as a guide in balancing the likelihood and magnitude of harm against the social utility of the thing, all the while considering a broad range of social and economic factors, including the cost to the defendant of avoiding the harm, as well as the risk and the social utility of the party's conduct at the time of the accident. Netecke, 747 So.2d at 498. In every responsible determination, all the circumstances surrounding the particular accident under review must be considered to determine whether DOTD's legal duty encompassed the risk which caused the plaintiff's damages. Oster, 582 So.2d at 1289; Landry v. State of Louisiana and the Bd. of Comm'rs of the Orleans Levee Dist., 495 So.2d 1284, 1287 (La.1986). Because everyone cannot be protected from all risks, this Court "must decide which risks are unreasonable." Graves, 703 So.2d at 573-74.
Clearly, Ms. Petre suffered a magnitude of harm of tragic proportions. She suffered severe and debilitating injuries and the loss of her ten-year old daughter. The likelihood of the harm in the present case, however, was minimal. Where a roadway is marked with a yellow warning sign of a curved road ahead with a 40 mph advisory speed,[1] this serves as a warning of apparent and obvious risk to the motoring public exercising ordinary care and reasonable prudence.[2] The DOTD's duty to provide a reasonably safe highway does not require the DOTD to take every conceivable measure to prevent injuries. Also, the likelihood that a reasonably prudent driver would glance away to examine the occupants of passing cars while entering a curve, steer the vehicle out of the travel lane, and onto the shoulder without stopping or significantly slowing is minimal. Compounding the scenario was Ms. Petre's grossly intoxicated state.
The level of risk created by the conduct of the parties differed in drastic degree. At most, DOTD exposed the plaintiffs to a momentary risk of harm as the Petre vehicle passed the particular highway curve in question. However, with Ms. Petre driving in such an intoxicated state, every intersection, other vehicle, and object beside the road posed a tremendous risk of catastrophic injury or death to Shanah, to the plaintiffs and to others.
This Court has also previously recognized the social utility of roadside ditches *1118 that contain culverts to keep water from draining onto the travel portion of the highway, which causes a dangerous situation for motorists. See Netecke, 747 So.2d at 499. Further, the driveway is a social necessity for landowners abutting state highways. See Brown, 707 So.2d at 1242 (finding DOTD not liable for abandoned driveway on shoulder which driver collided with and which caused his car to become airborne). Landowners must have an access route across DOTD's right-of-way, making their removal in the design of a road infeasible. In contrast, Ms. Petre's use of the highway at the time of the accident lacked any social utility. A motorist, exercising ordinary case and reasonable prudence, would refrain from using the state's highways for any purpose while intoxicated.
Finally, the physical and financial inability of DOTD to maintain the State's roadways, shoulders, and right-of-ways in anything more than a reasonably safe condition has been considered by this Court in the past as a factor in determining whether a particular condition complained of presents an unreasonable risk of harm to the plaintiff. See, e.g., Hunter v. State, Through Dep't of Transp. & Dev., 620 So.2d 1149, 1153 (La.1993).
The plaintiffs argue that the shoulder and slopes of the ditch were unreasonably hazardous because they did not meet current design standards. However, the DOTD clearly does not have a duty to bring old highways up to modern standards. Aucoin v. State, Through Dep't. of Transp. and Dev., 97-1938, 97-1967 (La.4/24/98), 712 So.2d 62; Myers v. State Farm Mut. Auto. Ins. Co., 493 So.2d 1170 (La.1986); Holloway v. State, Through Dep't of Transp. and Dev., 555 So.2d 1341 (La.1990). We have held that this duty does not exist unless a new construction or a major reconstruction of the highway has taken place. See Myers, 493 So.2d at 1173. In this case, although an asphalt overlay was placed on the highway in 1952, and the lanes were widened in 1987, no major reconstruction was undertaken. Thus, the DOTD had no duty to bring Highway 107 up to current design standards.
In addition, the testimony of both experts established that the fore slope of the ditch in the path traveled by Ms. Petre was never less than between 3:1 or 4:1, and perhaps high as 5:1 according to DOTD's expert. More to the point, both experts agreed that the reaction time of a sober driver was 1 to 1.5 seconds, and that, if Ms. Petre exited the highway at 45 mph in that time, she would have traveled between 66 and 100 feet. Thus, she would have traversed more than half the distance between the point she left the highway and the culvert/driveway before she could even react to regain control. Therefore, for the sake of argument, even assuming that the fore slope of the ditch was too steep, this fact becomes irrelevant because Ms. Petre ran off the road too close to the driveway embankment to be able to react.
Ms. Petre herself testified that she did not leave the highway due to any defect in the road, but rather because she lost her concentration. If she looked away to observe a passing car, she would have passed over the shoulder in a fraction of a second and began her descent into the ditch, whether the shoulder width was eighteen inches or several feet. Neither the shoulder width nor the fore slope angle played any significant role in causing this accident.
In addition, the majority relies on the fact that DOTD put in place a "substandard road program" between 1985 and 1988. However, DOTD initiated the program only at the advice of DOTD's legal counsel at the time. No measurements, monitoring, or other data were used to determine *1119 the appropriate locations for the signs or appropriate speed limits for these identified areas. At the time of the accident, the approach to the area from either direction was marked by yellow warning signs depicting the curve configuration and advising that the curves be navigated at 40 mph.
In fact, this Court has considered the relative safety of this road in another case, Ryland v. Liberty Lloyds Insurance Co., 93-1712 (La.1/14/94), 630 So.2d 1289, where the Court found that DOTD did not breach its duty to keep the roadway reasonably safe:
Further, no other accidents have occurred on this portion of Southbound LA 107, although there was one northbound single-car accident on LA 107 south of the curve [the same prior accident presented in Petre]. This non-existent complaint history and low accident rate existed despite the vicinity's average daily traffic count, tallied for both the north and south-bound lanes as follows: 1985-2750 vehicles; ... XXXX-XXXX vehicles.
The fact that the width of the shoulder did not meet any design standards is irrelevant because DOTD did not design the road; rather, they incorporated the existing road into the highway system in 1920. To find otherwise, and require that DOTD reconstruct the road, the adjoining shoulder and the private driveway, in my view requires overruling Myers. See Aucoin, 712 So.2d at 71 (Traylor, J., dissenting).
Generally, in other cases such as this one, where no road defect caused the driver to leave the road and the driver hit an object in the DOTD's right of way, the DOTD has been relieved of liability. See Cormier v. Comeaux, 98-2378 (La.7/7/99), 748 So.2d 1123, 1130-31 (imposing no liability where an intoxicated motorist left the roadway at a sharp angle and hit the back slope of an adjacent ditch); Graves, 703 So.2d at 573-74 (finding no duty by DOTD to keep the highway right of way clear of vegetation that creates site obstructions because "[t]he duty to maintain the roadway and shoulder does not encompass the risk that an intoxicated oncoming driver, traveling at a high rate of speed, will cross over into a motorist's lane of travel."); Myers, 493 So.2d at 1173 (finding no duty on DOTD's part when driver swerved off the road to avoid a car and ran into a tree in the ditch that had a fore slope of 2:1 because, "overall the highway was improved and made more safe for persons traveling on it" even though the travel lanes had been widened which reduced the width of the shoulders); Holloway, 555 So.2d at 1341 (finding no liability by DOTD when driver left the pavement for unknown reasons because no defects existed in the roadway or shoulder, and the roadway was unobstructed with a clearly visible shoulder sloping into a ditch).
Both Myers and Holloway involved Greenwell Springs Road, a highway built in the 1930's, with subsequently widened lanes that left a one-to-two-foot shoulder and an adjacent ditch. In both cases, this Court held that while DOTD has a duty to correct conditions existing on old highways that are unreasonably dangerous, it has no duty to bring old highways up to current safety standards unless the highway has undergone major reconstruction. See Cormier, 748 So.2d at 1130; see also Hunter, 620 So.2d at 1149 (finding DOTD had duty to bring narrow median up to AASHTO standards because highway underwent a major reconstruction).[3]
*1120 As stated in Graves, one cannot be protected from all risks. Undoubtedly, it would be desirable for the DOTD to design roads so that no accidents would ever occur, however, economic realities make such a goal impossible to reach. As we stated in Myers, "many Louisiana roads have narrow shoulders and steep roadside ditches and are lined with trees, culverts, fences, and other objects ..." making it "physically and financially impossible to bring all of the state's roads up to modern standards." 493 So.2d at 1173. Although old highways must be reasonably safe, the DOTD's duty to maintain old highways does not include the risk that a highly intoxicated driver will look away from the road, drive off the road, and subsequently launch her car airborne upon hitting a private driveway. To hold otherwise would essentially render DOTD the guarantor for the safety of all the motoring public and the insurer of all risks.
In addition to urging DOTD was liable because of the design of the curve, the plaintiffs urged that DOTD was liable for failure to provide chevrons, which were recommended by DOTD's engineers and installed after the accident. Mr. Evans testified that, at the time of the accident, the approach to the curve lacked reflective chevrons. In his opinion, had chevrons been present, they would have both warned and assisted motorists in negotiating the curve.
However, the post-incident placing of additional chevrons in the curve matters only if Ms. Petre was unfamiliar with the road. Ms. Petre had successfully negotiated the curve minutes prior to the accident. In addition, chevrons serve as further notification to the oncoming motorist of a change in horizontal alignment, but under the circumstances of this case would have done nothing to prevent the plaintiff from looking away from the road, and consequently driving off. Furthermore, her visual acuity was already affected by her level of intoxification as explained by the DOTD's expert, Dr. Ronald N. Padgett, who testified concerning the negative effect alcohol has on a person's ability to react.[4] Thus, Ms. Petre's failure to keep her eyes on the road, despite her knowledge that she was re-entering the curve in question made it immaterial whether the chevrons were in place.
The failure to provide the chevrons did not constitute a cause in fact of the accident. Ms. Petre was not a driver "exercising ordinary care and reasonable prudence." Brown, 707 So.2d at 1242. She made the disappointing choice to drink excessive amounts of alcohol in violations of statutes La.Rev.Stat. 14:98 and La.Rev. Stat. 14:32.1. In this case, the blood-alcohol results were not contested, and the driver with two prior DUI convictions was convicted of vehicular homicide for grossly negligent, reckless and criminal behavior in the death of her daughter. The significant cause of this accident was Ms. Petre's intoxication.
Ms. Petre's own misjudgment, and not any defective condition created by DOTD, caused Ms. Petre to negotiate her vehicle in such a negligent and dangerous manner. *1121 Dr. Padgett used the hospital's results on blood alcohol content two hours after the accident to back calculate that Ms. Petre had a blood alcohol content of 0.2753 at the time of the accident. In his opinion, anyone with a blood-alcohol content of 0.20 is "severely impaired." The record evidence clearly establishes that the accident was caused solely by driver error.
Moreover, the majority adds insult to injury in affirming the lower courts' finding that DOTD was 50% at fault. Ms. Petre, a criminally negligent driver, should be assigned a significant majority of the fault for driving off the road at the curve and launching off the driveway, a driveway that DOTD had no duty to correct. See Brown, 707 So.2d at 1245 (reapportioning fault assigned to DOTD from 75% to 25% for sober driver who fell asleep); Cay v. State, Through Dep't of Transp. & Dev., 93-0887 (La.1/14/94), 631 So.2d 393, 399 (reapportioning 90% fault to an intoxicated pedestrian); Molbert v. Toepfer, 550 So.2d 183 (La.1989) (assigning 5% liability to DOTD when driver had .13% blood alcohol level).
DOTD cannot be held responsible for all injuries on the state's highways that result from careless driving. My sympathy goes to Ms. Petre for her severe injuries and to both Petres for the unfortunate loss of their daughter. However, DOTD is not responsible for these tragically unnecessary consequences. The road and shoulder of Hwy. 107 were not unreasonably dangerous because DOTD was not required to upgrade Hwy. 107 to current design standards, the highway met design standards for the ditch fore slope at the time it entered the highway system, the curve was properly signed to alert drivers, and the curve could be negotiated at speeds higher than the advisory signs or the speed plaintiff was traveling. Accordingly, I dissent.
VICTORY, J., dissenting.
The trial court was manifestly erroneous on the issue of causation. In my view, this accident was caused solely by Ms. Petre, whose blood alcohol was almost triple the legal limit for intoxication.
NOTES
[*] Melvin A. Shortess, assigned as Associate Justice ad hoc, sitting for Justice Jeannette T. Knoll, recused. Retired Judge Robert L. Lobrano, assigned as Associate Justice Pro Tempore, participating in the decision.
[1] The record is not entirely clear that the two prior arrests resulted in DWI convictions.
[2] Louisiana Indemnity Company later became Patterson Insurance Company.
[3] Mr. Petre was awarded $250,000 in general damages for the wrongful death of his daughter and $9,120.95 in special damages.
[4] Ms. Petre was awarded $250,000 in general damages for the wrongful death of her daughter; $272,000 in general damages for her own injuries, and per a joint stipulation, $37,430.59 in special damages.
[5] La. Civ.Code art. 2317 provides in pertinent part as follows: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."
[6] La.Rev.Stat. 9:2800 provided as follows:

A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
C. Constructive notice shall mean the existence of facts which infer actual knowledge.
D. A violation of the rules and regulations promulgated by a public entity is not negligence per se.
E. "Public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions.
[7] DOTD cites Cormier, 748 So.2d 1123 and Ledoux, 719 So.2d 43, both involving accidents that occurred when the drivers were intoxicated. We find that these cases provide little support for DOTD's position that it should not be held liable because the driver was intoxicated at the time of the accident. In both Cormier and Ledoux, the district court, as fact-finder, found that DOTD was not liable, and the accident was solely the result of driver fault. This court simply reviewed such findings under the manifest error standard. The instant case is distinguishable from Cormier and Ledoux, because the district court in this case made a finding of fact that DOTD was partially at fault for causing the accident. Once again, we must simply apply a manifest error standard to review this factual finding.
[**] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision. Retired Judge Melvin A. Shortess, Associate Justice ad hoc, sitting for Justice Jeannette T. Knoll, recused.
[1] The defendants' expert witness testified that he used ball bank tests to verify that the curve could be safely negotiated by a vehicle going at least 50 mph.
[2] DOTD's duty to provide a reasonably safe roadway may be discharged by providing adequate warnings of a defect or hazard. Warnings should be sufficient to alert the ordinary, reasonable motorist, based on considerations of the probable volume of traffic, the character of the road, and the use reasonably anticipated. See Hardenstein v. Cook Construction, Inc., 96-0829 (La.App. 1 Cir. 2/14/97), 691 So.2d 177, 183-184, writ denied, 97-0686 (La.4/25/97), 692 So.2d 1093. In the instant case, DOTD arguably discharged any duty it may have had by posting an advisory speed of 40 mph and a warning of the curve ahead in both directions on the road.
[3] In a third case involving Greenwell Springs Road, this Court found DOTD liable for failing to correct road conditions when the "DOTD could not name a more dangerous road given the combination of dangerous conditions." Aucoin, 712 So.2d at 66-7. However, the circumstances in this case are easily distinguishable from those in Aucoin: namely, in this case the driver was intoxicated; the road was marked with a fog line; the drunk driver ran off the road because she looked away from the road; there were no DOTD standards applicable to Hwy. 107 that the DOTD was compelled to meet, such as the 3:1 sloping in Aucoin, yet the fore slope in this case met the 3:1 design standards; and the driver had no time to react before hitting the driveway, making the fore slope irrelevant.
[4] Dr. Padgett testified that above blood alcohol content levels of 0.20, the vision blurs because the eye muscles cannot work sychronously, and the visual field contracts, making things look smaller and further away.