19S0L GOTHARD, Judge.
In this wrongful death action, defendant, State of Louisiana, Department of Transportation and Development (DOTD), appeals a decision by the trial court that found it 50% liable for damages sustained in the automobile accident, which were set at $850,000. For reasons that follow, we reverse the finding that DOTD is liable for this accident.
The record shows that, on July 9, 1986, Carl Gravley was killed in an automobile accident on Louisiana Highway 45 when his vehicle failed to negotiate “Fleming’s Curve,” crossed the center line and collided with a vehicle traveling in the opposite direction driven by Gary Sheffler. At the time of the accident, Gravley was intoxicated, with a blood alcohol level of .24. Grav-ley’s widow and two children filed this wrongful death action against the driver of the other vehicle, his insurance company and DOTD.
The litigation in this action was protracted and did not go to trial on the merits before the bench until February 20, 2002.[1] It is important to note that on April 13, 1998, the trial court rendered a partial summary judgment which found | othat Fleming’s Curve is unreasonably dangerous as a matter of law pursuant to Martin v. DOTD, 95-139 (La.App. 5 Cir.11/15/95), 665 So.2d 457, writ denied, 95-2983 (La.12/14/95), 666 So.2d 657. However, in that same ruling, the trial court denied the motion for summary judgment on the issue of whether the curve was a cause-in-fact of the accident. Thus, the matter went to trial on causation and quantum, with DOTD as the only remaining defendant.
Post trial memoranda were filed and considered, and a judgment was rendered from the bench on April 22, 2002. The judgment was reduced to writing and signed on June 4, 2002. That judgment held in favor of plaintiffs, finding that liability should be split 50-50 between Grav-ley and DOTD. The judgment further awarded damages of $850,000, which were reduced to $425,000 because of the finding of 50% fault on the part of Gravley. DOTD appeals that judgment, arguing that the trial court erred in assessing fault on the part of DOTD, and in awarding excessive damages.
At trial Joan Gravley, the widow of Carl Gravley, testified that the couple had been married since 1970 and had two children, who were 12 and 13 at the time of the accident in 1986. Ms. Gravley described her husband as a “cool, calm kind of guy,” who enjoyed spending his leisure time fishing. She also testified that Carl was very involved with his children and spent as much time with the family as his work permitted. Mr. Gravley was employed with F.W. Woolworth Company as a co-manager at the time of his death. He had been with the company for over fifteen years and worked long hours. He was the main breadwinner of the family, and was earning about $28,000 per year at the time of his death in 1986. She described the last day of her husband’s life as a happy family day. She continued in her testimony, describing the emotional distress she experienced when she got the call from the hospital telling her of the accident, and during the aftermath of making funeral arrangements. She also described the adverse impact Carl’s death |4had on the family in terms of emotional and financial tolls. She explained that, although Carl’s drinking was a problem between the couple, their relationship was good overall.
On cross-examination, Mrs. Gravley testified that her husband often went fishing *536 in Lafitte and was familiar with the roadway on which the accident occurred. Mrs. Gravley also testified that Mr. Gravley’s drinking was a problem for them and that he had spent six weeks in F. Edward Hebert Hospital in treatment for alcoholism. The treatment worked for about one year, after which Mr. Gravley began to drink again.
The court also heard testimony from Mr. Gravley’s daughter, Rochelle Gravley Og-eron, who was twelve when her father died. She spoke lovingly of her time with her father before his death, and described him as a family man who spent Sundays with his family. She also testified that her father went to Lafitte often to fish.
Mr. Gravley’s son Kevin, who was thirteen at the time of the accident, described his life with his father as a happy one in which they would interact in many father/son activities such as sports and fishing. Kevin testified that he went fishing with his father and that his father had two favorite spots. The Jean Lafitte National Park and the Harvey Locks were the two fishing spots to which the duo would go. He also stated that his father traveled the road to Lafitte and the curve in the road at which the accident happened often and knew it well.
Mr. Gary Scheffler, the driver of the other car involved in the accident, testified that he and his wife were traveling south on Highway 45 toward Lafitte. When they approached a curve, Mr. Scheffler saw a truck approaching in the opposite direction that was not making the curve well and was crossing over into the oncoming lane. Mr. Scheffler stated that he knew the other vehicle would not make the turn. Mr. Scheffler tried to veer far enough off the road to avoid the | ¡¡accident, but was unable to do so. He testified that the accident happened so fast, he could not avoid the oncoming truck driven by Mr. Gravley. Mr. Scheffler explained that he had already come out of the curve and was on the shoulder of the road when the oncoming vehicle struck his truck. Mr. Scheffler stated that his family owned a camp in Lafitte and he was familiar with the roadway and the curve, known as Fleming’s Curve.
The record also contains documentary evidence of the toxicology report on Mr. Gravley that shows his blood alcohol level was .24, numerous photographs of the accident scene, and a large plot plan of the curve near which the accident occurred.
There are also depositions of various experts in accident reconstruction. One of those experts, Raymond Burkart, testified that the Gravley vehicle went off the roadway on the right side and attempted to steer back onto the travel portion of the roadway, but overcompensated and went into the oncoming lane. Mr. Burkart opined that the sequence of events that occurred after the vehicle went off of the roadway would have occurred regardless of the condition of the driver. However, Mr. Burkart also testified that the level of intoxication may have caused the vehicle to go off the roadway initially, and would cause a delayed reaction and impaired judgment in getting back onto the roadway. Mr. Burkart further testified that the vehicle left the roadway prior to the curve, and the attempt to recover maneuver occurred in the curve. Mr. Burkart testified that a driver with Mr. Gravley’s blood alcohol level would be “highly impaired.” Mr. Burkart stated that Mr. Gravley was traveling about 40 to 45 MPH when the accident happened, which is within the speed limit at that point of the highway. He also testified that, while Mr. Gravley’s intoxication may have been a factor in the initial problem of leaving the roadway, the overcompensation to return to the roadway might not have been effect *537 ed by the intoxication because it happened in the middle of the curve. |fiHowever, Mr. Burkart stated that Mr. Gravley’s impaired condition and resulting slower reaction time did prevent him from taking the evasive action necessary to avoid the oncoming traffic and return to the right lane in time to avoid the accident. Nevertheless, Mr. Burkart did state that, in his opinion, the roadway was a cause of the accident.
Mr. Joseph Blaschke, another expert who offered testimony in a deposition, stated that he found the sole cause of the accident was driver error. Mr. Blaschke testified that Mr. Gravley was traveling at an excessive rate of speed, and was “extremely impaired” by the consumption of alcohol.
After consideration of the evidence and testimony offered at trial and by deposition, the trial court ruled that the roadway was a cause-in-fact of the accident, and that fault would be apportioned equally between DOTD and Gravley.

CAUSATION

Because this accident occurred in 1986, the plaintiff is only required to prove the traditional elements of strict liability under La. C.C. art. 2817. Dupree v. City of New Orleans, 99-8651 (La.8/31/00), 765 So.2d 1002. Therefore, the plaintiff had to prove that: (1) the DOTD owned or had custody of the thing that caused the damage; (2) the thing was defective in that it created an unreasonable risk of harm to others; and (3) the defect was a cause-in-fact of the accident. Id. Plaintiffs in this case do not have to show knowledge of the defect pursuant to La. R.S. 9:2800.
There is no question that DOTD had custody of the roadway, and as previously stated, the issue of whether the roadway is unreasonably dangerous has already been decided against DOTD in summary judgment, and that ruling has not been appealed. Thus, our inquiry will not include a discussion on those issues. The only remaining issue is whether the plaintiffs met the burden of proving the defect was a cause-in-fact of the accident.
|7In making the ruling in the instant case, the trial court relied on Petre v. State Ex Rel. DOTD, 01-0876 (La.4/3/02), 817 So.2d 1107. In Petre, the Louisiana Supreme Court considered the question of whether DOTD can be held liable for an accident when the intoxication of the vehicle’s driver was a major cause of the accident. In Petre, the court refused to create a hard and fast rule that an intoxicated driver cannot recover from DOTD for injuries sustained in an accident on an unreasonably dangerous roadway. Rather, the court used the manifest error standard to review the finding that road conditions were a cause-in-fact of the accident. Further, the Petre court analyzed the allocation of fault on a traditional manifest error/clearly wrong standard of review that included consideration of the factors set out in Watson v. State Farm Fire & Casualty Co., 469 So.2d 967, 974 (La.1985). The Petre court stated:
Whether or not we agree with the equal allocation of fault between Ms. Petre and DOTD, we find it difficult, if not impossible, to conclude that the district court’s reasoning was manifestly erroneous. In analyzing the allocation of fault of the parties, the court of appeal correctly applied the manifest error standard. Petre, 775 So.2d at 1265. Furthermore, the court of appeal was correct in applying the Watson factors, which include the following: 1) whether the conduct results from inadvertence or involved an awareness of the danger; 2) how great a risk was created by the conduct; 3) the significance of what was sought by the conduct; 4) the capacities of the actor, whether superior or inferi- or; and 5) any extenuating circum *538 stances that might require the actor to proceed in haste, without proper thought.
Id. 817 So.2d at 1114-1115.
In accordance with Petre, we will review the issues of causation and allocation of fault using the manifest standard and the five factors of Watson. These factors are an elaboration on the concept of assessing the percentages of fault by consideration of the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. Watson, supra, quoting from Section 2(b) of the Uniform Comparative Fault Act and the Comments thereto.
| sIn the instant case, the roadway was found to be unreasonably dangerous and that fact is not in dispute. It is also undisputed that Gravley’s level of intoxication at the time of the accident caused him to veer off the roadway, and was a major cause of the accident. In collisions that occur as a result of a motorist’s act of driving his vehicle into that part of the roadway reserved exclusively for traffic proceeding from the opposite direction, there is a presumption of negligence. Cross v. State, 95-858, 95-859, 95-860 (La.App. 5 Cir. 2/27/96), 670 So.2d 1324. The burden then shifts to the motorist to show by clear and convincing evidence that his sudden presence in the opposing lane of traffic was due to unexpected and unforeseen circumstance over which he had no control and that he did not contribute to the mishap. Alford v. Estate of Zanca, 552 So.2d 7, 13 (La.App. 5 Cir.1989). “Clear and convincing” evidence means that the driver who crosses into the opposite lane of travel must clearly exhibit that his conduct in no way contributed to the accident. Cross, supra, 670 So.2d at 1327.
It is clear from the record that the trial court found each party equally liable because it was following Petre. However, as previously noted, Petre did not require a strict 50-50 split of liability. The majority opinion in Petre merely found that the trial court was not manifestly erroneous under the facts in that case. In Petre an intoxicated driver left the paved portion of the roadway, and, because of a ditch was unable to negotiate the vehicle back onto safe ground, causing the car to become airborne. Petre involved a one-car accident in which the driver did not cross the center line. The trial court found the dangerous condition of the shoulder and the ditch along side of the roadway was a cause of the accident.
In the instant case, unlike Petre, Mr. Gravley traveled into the opposite lane of traffic and must bear the presumption of negligence. Further, our plaintiffs must show, by clear and convincing evidence, that no error in his driving caused his presence in the opposite lane of traffic. We find the plaintiffs herein have failed to 1 flmeet that burden, and the trial court was clearly wrong when it ruled that DOTD was partially liable for the accident.
Mr. Gravley was very familiar with the roadway. There is ample testimony that Gravley traveled this road often to reach his favorite fishing spot, without mishap. There is also evidence to show that Mr. Gravley was traveling at a rate of speed of about 40 to 45 miles per hour when he went off of the roadway, and was intoxicated with an alcohol blood level of over twice the legal limit. There is no evidence that any other factor caused Mr. Gravley to leave the roadway before approaching the curve. Although the design of the roadway could have contributed to his inability to recover from the initial driving error, it is also evident that his level of intoxication affected his judgment and reaction time, making it unlikely that he could return safely to the roadway. Mr. Gravley was driving drunk at 40 to 45 miles per hour around a dangerous curve he knew well. Because of his high level of intoxication he *539 left the roadway before he even reached the curve and overcorrected to attempt a return to the highway surface, causing him to cross over into the oncoming lane of traffic. His level of intoxication, which affected his judgment and reaction time, prevented him from recovering after he overcompensated for the excursion off the roadway. Under these facts we find that Mr. Gravley was 100% at fault in the accident and we reverse the trial court’s allocation of 50% to DOTD.
DOTD also appeals the award of damages. Because we find Mr. Gravley 100% at fault in this accident, this issue is moot.
For the foregoing reasons, the judgment of the trial court is reversed insofar as it finds DOTD at fault in this accident and judgment is rendered finding Mr. Gravley 100% at fault in the accident.

REVERSED.

. The other driver and his insurer, originally named as defendants, were released on summary judgment. Thus, at the time of trial the only defendant remaining was DOTD.