858 So.2d 569 (2003)
Wayne Richard TEMPLE
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. 2002 CA 1977.
Court of Appeal of Louisiana, First Circuit.
June 27, 2003.
Writ Denied November 7, 2003.
*572 Leonard Cardenas, III, Baton Rouge, Counsel for Plaintiff/1st Appellant Wayne Richard Temple.
Richard P. Ieyoub, Attorney General, William E. Crawford, Jr., Assistant Attorney General, Baton Rouge, Counsel for Defendant/2nd Appellant State of Louisiana, Through the Department of Transportation and Development.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
FITZSIMMONS, J.
Plaintiff, Wayne Richard Temple, filed a claim for damages against defendant, State of Louisiana, Department of Transportation and Development (DOTD). The petition alleged that DOTD was liable for the death of Mr. Temple's wife of one month, Anna Marie Temple. The jury awarded Mr. Temple $75,000.00 for his wrongful death claim, but allocated 85% of the fault to Mrs. Temple and 15% to DOTD. The trial court granted Mr. Temple's motion for additur, increased the award for wrongful death to $200,000.00, and alternatively granted a new trial on the issue of damages. DOTD rejected the additur, *573 thereby subjecting itself to the new trial. See La. C.C.P. art. 1814. After the new trial, the jury awarded Mr. Temple $100,000.00. Subsequently, the trial court granted Mr. Temple's motion for a Judgment Notwithstanding the Verdict (JNOV), and raised the award to $250,000.00. Both parties appealed.
Plaintiff assigned the following errors to the judgment:
1. The trial court erred in instructing the jury that the plaintiff was presumed at fault for leaving the roadway, thus erroneously shifting the burden of proof.
2. The trial court erred in allowing the police officer to testify that he smelled alcohol "despite that same [c]ourt's earlier (and correct) ruling disallowing evidence of alleged intoxication based on a finding that there was no competent evidence that Anna Marie Temple was intoxicated at the time of her accident."
3. The trial court erred by failing to find DOTD 100% at fault.
4. Alternatively, if the testimony about the odor of alcohol was admissible, the jury erred in allocating the majority of the fault to Anna Marie Temple.
DOTD assigned the following errors:
1. The jury erred in finding that DOTD was at fault when none of the alleged defects in the roadway was shown to have caused the accident.
2. The trial court improperly allowed a jury instruction and evidence about design guidelines formulated after O'Neal Lane was originally constructed.
3. The trial court improperly raised the award of damages.
After a thorough review of the record, we reverse the increase in damages by the trial court and reinstate the original jury verdict. The remainder of the judgment is affirmed.

FACTS OF THE ACCIDENT
Construction began on O'Neal Lane in 1957. It is unclear from the record at what times the lane was a actually a state road, but, at the time of the accident, the roadway was a state road and was being re-surfaced. Mrs. Temple lived in the area of O'Neal Lane for about fifteen years. The day before the accident, she drove the same route that she used the night of the accident, and was aware of the re-surfacing. On February 12, 1998, Mrs. Temple was killed in a one vehicle accident at approximately 1:30 a.m. As Mrs. Temple approached a curve in O'Neal Lane, her car left the roadway. After leaving the roadway, the car continued in a straight line over a driveway, bottomed out on the side of a driveway culvert and the dirt above it, impacted several mailboxes and some bushes, grazed a utility pole, and hit a steel guy line or cable attached to a telephone pole. Finally, the car came to rest upside down wrapped in the steel cable. Mrs. Temple, who was not wearing her seatbelt, was ejected from the car. No evidence of skidding or braking was found. The record contains no evidence that Mrs. Temple attempted to return to the roadway. No other accidents or collisions had occurred at the same point on O'Neal Lane.

JURY INSTRUCTIONS
The pertinent jury instructions given by the trial judge are as follows:
[DOTD's] duty to provide a reasonably safe highway does not require DOTD to take every conceivable measure to prevent injuries. DOTD does not have a duty to bring old highways up to current safety standards, unless the highway has undergone major reconstruction. Nevertheless, DOTD has a duty to correct conditions existing on *574 old highways that are unreasonably dangerous, and modern AASHTO standards may be considered by you in determining whether the roadway was unreasonably dangerous.
You must also determine whether the state has proven that the conduct of Anna Marie Temple contributed to the plaintiff's injuries. Louisiana law states that the recovery of an injured person must be allocated between any persons who may have contributed to that injury.
* * *
In this case, the standard applicable to Anna Marie Temple's conduct is that she exercise a degree of care which we might reasonably expect a person to exercise for her own safety and protection. The state has the burden of proving by a preponderance of the evidence that Anna Marie Temple failed to conform to that standard and by that failure, caused her own injuries, either in whole or in part. If the state convinces you of that, then you must take into account the degree of fault attributable to Anna Marie Temple in returning your verdict. The greater the deviation made by a person from this standard, the greater you should make her degree of fault. I will give you some questions to answer on your verdict sheet that will assist you in this determination.
A presumption of negligence arises when a driver leaves her own lane of traffic. In order to rebut that presumption, plaintiff has the burden of proving that the driver was not guilty of any dereliction, however slight.
There is no presumption of negligence when a driver consumes alcohol prior to an accident. In order to establish the negligence of a driver who may have consumed alcohol prior to the accident, the state must show that the alcohol consumption was a legal cause of the accident.
Louisiana law provides that you divide the total responsibility of damages among those who were at fault. You should do this by assigning percentages which will [total] 100%. You are free to assign whatever percentage you deem to be appropriate and you should do so by answering the questions which will be provided to you on the special verdict sheet.
Presumption of Negligence
The plaintiff's primary concern is that the presumption of negligence instruction improperly shifted the burden of proof. Plaintiff, Mr. Temple, argues that the application of the presumption required him to prove "by clear and convincing" evidence that Mrs. Temple was not negligent.
The plaintiff has the burden to prove, by a preponderance of the evidence, that DOTD caused the accident and the attendant injuries and damages. See Payne v. State Farm Mutual Automobile Insurance Company, 99-2737, 99-2738, p. 3 (La.App. 1 Cir. 12/22/00), 775 So.2d 683, 685. A presumption "shifts the burden of production or persuasion to the [defendant], who can then attempt to overcome the presumption." Black's Law Dictionary 1203 (7th ed.1999). In Ferrell v. Fireman's Fund Insurance Co., 94-1252, p. 6 (La.2/20/95), 650 So.2d 742, 746, the supreme court reiterated a Louisiana jurisprudential rule that, "in exceptional cases a presumption of negligence arises when a defendant motorist leaves his own traffic lane and strikes another vehicle. In such a case, the burden of proof on such a defendant motorist is to show that he was not guilty of a dereliction, however slight." After explaining that the shift in the burden was based on the duty of the defendant motorist to remain in his own lane of *575 travel, the court applied the presumption to one of the defendants. Ferrell, 94-1252 at p. 6, 650 So.2d at 746-47; see La. R.S. 32:71 A. However, the actual facts of Ferrell differed from those underlying the traditional application of the presumption. In Ferrell, the motorist defendant left her lane of travel, but did not directly strike the plaintiff's car. Instead, the position of the defendant's car caused a subsequent collision between the plaintiff and other cars. Ferrell, 94-1252 at pp. 1-2, 650 So.2d at 744.
The trial court has discretion in choosing the instructions to be given to the jury. However, if the wrong standard was applied to the prejudice of the plaintiff, this court would conduct a de novo review and render a decision. Payne, 99-2737, 99-2738 at p. 4, 775 So.2d at 686. In reviewing the trial court's decision, the appellate court must exercise restraint before overturning a jury verdict on the suggestion that jury instructions were so erroneous as to be prejudicial. Billiot v. Estate of Richardson, 94-1794, p. 4 (La. App. 1 Cir. 5/5/95), 655 So.2d 443, 445.
In this case of a one vehicle accident, we do not find the exceptional circumstances that underlie the Ferrell presumption. Thus, we find that the presumption does not apply and the trial court abused its discretion in instructing the jury on its use. The remaining question is whether the instruction in this case impermissibly placed a heavier burden on plaintiff, Mr. Temple, thereby tainting the jury's verdict, and requiring a de novo review.
The effect of the Ferrell presumption is to shift, to the defendant, the plaintiff's initial burden to prove negligence in a vehicular accident. However, in this case, the burden of proof was not shifted to the defendant. It remained with the plaintiff,
Mr. Temple, who properly had the burden of proof in this wrongful death case. The plaintiff had the burden to prove, by a preponderance of the evidence, that DOTD caused the accident and attendant damages. Under the particular facts of this accident (especially with one victim and one defendant accusing each other of 100% liability), and without the presumption, plaintiff's failure to prove DOTD's fault could reasonably result in a corresponding finding of victim fault. Most importantly, the other instructions given by the court at the same time as the presumption more clearly explained the proper placement of the burdens of proof and the essential principles of comparative negligence. The plaintiff's traditional burden to prove his case, in conjunction with the ameliorating effect of the other instructions, substantially dampened any possible prejudice or confusion that may have been caused by the inapplicable instruction. This finding is bolstered by the jury's allocation of fault to both parties on a record that is not overwhelmingly supportive of the causal link between the alleged defects in the roadway and the accident. Therefore, from our review of the record, we cannot say that the erroneous instruction improperly shifted the burden of proof, or created prejudice sufficient to interdict the jury's decision making process. For these reasons, a de novo review is not required.
AASHTO Standards
DOTD complains of the trial court's decision to allow testimony based on AASHTO (American Association of State Highway and Transportation Officials) standards and guidelines formulated and published after O'Neal Lane was constructed. DOTD argues that the current project was only a re-surfacing. Thus, only the standards in place at the time of construction, and applicable to the particular highway in question, should have *576 been presented to the jury. Primarily relying on the Louisiana Supreme Court decisions of Petre and Aucoin, Mr. Temple asserts in his brief that post-construction standards and guidelines are "a relevant factor in determining whether the roadway is unreasonably dangerous" and DOTD was negligent in not correcting those defects. See Petre v. State, Department of Transportation and Development, XXXX-XXXX, pp. 10-11 (La.4/3/02), 817 So.2d 1107, 1113; Aucoin v. State, Department of Transportation and Development, 97-1938, 97-1967, pp. 6-8 (La.4/24/98), 712 So.2d 62, 66-67.
DOTD has no duty to conform to post-construction standards, such as AASHTO, but does have a duty to correct conditions on old roadways "that are unreasonably dangerous." Cormier v. Comeaux, 98-2378, pp. 9-10 & 13 (La.7/7/99), 748 So.2d 1123, 1129, 1131. Under the holdings of Petre and Aucoin, plaintiff may use post-construction standards, such as AASHTO, as an aid or piece of the puzzle in his attempt to prove that the roadway was unreasonably dangerous.[1]
Therefore, the trial court did not abuse its discretion in its instruction to the jury on the use of the AASHTO standards. The instruction did not require the jury to apply post-construction standards or guidelines as a basis for finding that noncompliance was negligence per se. The instruction did correctly state the legally permissible use of post-construction standards and guidelines like AASHTO to a case arising in 1998.

ADMISSIBILITY OF ALCOHOL ODOR EVIDENCE
Plaintiff, Mr. Temple, assigned error to the trial court's decision to allow testimony about the smell of alcohol coming from the victim. Mr. Temple argues that the testimony was more prejudicial than probative, and should have been excluded under the trial court's prior ruling prohibiting evidence of intoxication. Because of the legal error, plaintiff believes this court should conduct a de novo review.
At trial, a state trooper testified that he had many years of experience detecting intoxication and the smell of alcohol. He stated that he detected the "odor of alcohol" coming from Mrs. Temple at the scene of the accident. Under questioning by plaintiff's counsel, the trooper agreed that other things smell like alcohol, such as "fake beer." Later, at the hospital, another trooper, familiar with issuing citations for DWI's, testified that he "smelled an odor of alcohol, what I believe to be alcohol coming from the room" where a doctor was performing a "blood alcohol extraction" on Mrs. Temple. On cross-examination, the trooper admitted that he could not tell if the smell emanated from beer, cough syrup, or something else. Neither trooper testified that Mrs. Temple was intoxicated.
"`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La. C.E. art. 401. Louisiana Code of Evidence article 701 allows a lay witness with firsthand knowledge to testify to an opinion "[r]ationally based on the perception of the witness; and" if it is "[h]elpful to a clear understanding of his testimony or the determination of a fact in issue." See La. C.E. art. 701, 2003 Authors' Notes (1). Thus, a *577 lay witness can give opinion testimony based on his training, investigation, perception of the scene, and observation of physical evidence. Wingfield v. State, Department of Transportation and Development, 2001-2668, 2001-2669, p. 19 (La. App. 1 Cir. 11/8/02), 835 So.2d 785, 801, writ denied, XXXX-XXXX, XXXX-XXXX, XXXX-XXXX (La.5/30/03), 845 So.2d 1059. "All relevant evidence is admissible, except as otherwise provided by" law. La. C.E. art. 402. Relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." La. C.E. art. 403. Rulings on the admissibility of evidence are well within the discretion of the trial court. Wingfield, 2001-2668, 2001-2669 at p. 21, 835 So.2d at 803.
The troopers testified to their personal opinions, based on training and experience, that they smelled the odor of alcohol emanating from the nearby victim. Mr. Temple's counsel was allowed to challenge their opinion, and, by questioning, attempt to rebut any inference that the alcohol smell came from an intoxicating beverage. Under the particular facts of this case, we cannot say that the trial court abused its discretion or was clearly wrong in allowing witnesses, with reasonably reliable first hand knowledge, to provide testimony "[r]ationally based" on their observations. While testimony concerning the use of alcohol or drugs may sometimes elicit prejudice, the plaintiff here was afforded an opportunity to question the observers, rebut any prejudicial perceptions, and expose weaknesses or errors in the testimony. Based on this record, we do not find that prejudice "substantially outweighed" the probative value of the testimonial evidence. La. C.E. art. 403. A trial should be, as nearly as possible, a search for the truth. We find no abuse of discretion and no basis for a de novo review.

LIABILITY AND ALLOCATION OF FAULT
Both parties assign error to the jury's liability or fault determinations. In the event this court did not conduct a de novo review, Mr. Temple argues that the jury erred in assessing the majority of the fault to Mrs. Temple. DOTD asserts that the alleged defects did not cause the damages and it should not have been held liable.
DOTD has a duty to keep the state roadways reasonably safe for persons exercising ordinary care and reasonable prudence. Cormier, 98-2378 at p. 6, 748 So.2d at 1127. To meet plaintiff's burden of proof to show a breach of duty and causation by DOTD, he must show that (1) defendant had custody over the thing causing the harm, (2) the thing causing the damage was defective and created an unreasonable risk of harm, (3) defendant had actual or constructive knowledge of the defect, and failed to take corrective action within a reasonable time, and (4) the defective thing caused the injury or damages to the plaintiff. Petre, XXXX-XXXX at p. 5, 817 So.2d at 1110. The criterion for a finding of unreasonable risk of harm "entails a myriad of considerations and cannot be applied mechanically." Oster v. Department of Transportation and Development, State of Louisiana, 582 So.2d 1285, 1288 (La.1991). The inquiry involves a balancing of the likelihood and magnitude of the harm against the utility of the thing, while considering social and economic factors. Cormier, 98-2378 at p. 8, 748 So.2d at 1128.
Whether a road is unreasonably dangerous and whether an unreasonably dangerous defect caused the plaintiff's damages are findings of fact. Petre, XXXX-XXXX at p. 7, 817 So.2d at 1111. An appellate court may not overturn a jury's finding *578 of fact "in the absence of `manifest error' or unless it is `clearly wrong."' Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Even if the court of appeal believes that its own findings are more reasonable, the jury's "reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony." Id. "Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." Stobart, 617 So.2d at 883. Similarly, apportionment or allocation of fault is subject to the clearly wrong standard of review. Clement v. Frey, 95-1119, 95-1163, p. 7 (La.1/16/96), 666 So.2d 607, 610-11.
By assigning 85% of the fault to Mrs. Temple, the jury found her primarily responsible for leaving the roadway. This finding of liability and percentage of fault is bolstered by the absence of any skid or braking marks on the straight line path of the car after it left the roadway. The record contains no evidence or sign that Mrs. Temple tried to regain control or return to the road.
Plaintiff's expert, relying on various highway standards, found that the roadway had five defects: the roadway lacked fog and center lines to guide the driver, the utility poles and culvert were too close to the roadway, the ditch slope ratio and shoulder were not adequate, and a bump or reverse pothole acted as a launch pad, causing the driver to lose control of the car. The expert opined that the alleged defects were unreasonably dangerous, and without them, "we probably wouldn't be here."
DOTD's expert disagreed. He presented opinion and documentary evidence rebutting the applicability of the standards relied on by plaintiff's expert, challenging the requisite width of the shoulders on O'Neal Lane and the purpose of highway markings, questioning the economic feasibility of removing culverts and poles from highway right of ways, and contradicting the claimed steepness of the slope and existence of the bump. DOTD's witnesses testified that there were no unreasonably dangerous problems at the location of the accident and there had been no prior accidents, or complaints lodged prior to the Temple accident. Thus, the jury was faced with conflicting evidence and opinions.
Based on our review of the record, the jury could have reasonably found, singly or in combination, that plaintiff failed to show (1) that, at the time and location of the accident, the bump or reverse pothole existed, (2) that the slope ratio of the ditch was unreasonably dangerous, (3) that it was economically feasible to remove obstacles from this road and other roadsides across the state, (4) that particular roadside objects presented a danger that outweighed their utility, (5) that the obstacles were new and unknown to Mrs. Temple,
(6) that the alleged defects specifically caused the accident and damages here, or
(7) that DOTD had actual or constructive notice of the alleged defects and failed to respond timely.
Although plaintiff's expert concluded the defects probably caused the accident, his specific testimony on the defects primarily highlighted the dangerous possibilities presented by the alleged defects to all motorists. On this record, particularly in the absence of a more direct link to causation, we cannot say that the jury was "clearly wrong" in rejecting the majority of plaintiff's version of causation, liability, or allocation. Clement, 95-1119, 95-1163 at p. 7, 666 So.2d at 611. Where two permissible views of the evidence are presented, the fact finder's choice between *579 them cannot be "clearly wrong." Stobart, 617 So.2d at 883. Thus, we affirm the allocation of 85% of the fault to Mrs. Temple.
While assessing the greater fault to Mrs. Temple, the jury also assigned 15% of the fault to DOTD. Though we are unsure of the basis for that allocation, and must speculate, the likeliest candidate is DOTD's failure to re-mark the roadway surface. On this issue, we again have a contest between the experts.
The trooper on scene testified that fog lines were missing from the edge of the roadway at the point the car left the road, but he remembered double yellow center lines. Mr. Temple introduced photos, taken a few days after the accident, in which the fog and center lines were missing. While Mr. Temple's expert opined that fog and center lines generally help motorists stay on the road by outlining the path of the roadway, DOTD's expert testified that highway markings are used primarily to aid drivers unfamiliar with a roadway, not a repetitive user like Mrs. Temple. From the testimony, the jury may have found that the fog and center lines were missing. The jury may have extrapolated an opinion and found that the absence of these markings contributed, in conjunction with her own negligence, to Mrs. Temple's inability to keep her vehicle on the roadway.
Though our analysis of the basis for DOTD's fault is purely speculative, we are guided by the precepts of Stobart. Regardless of whether the fact finder favors the version of the story told by the plaintiff or defendant, we cannot reverse based merely on our choice of facts. If the record reasonably supports the determinations of the jury, we must defer to their first-hand observation of the witnesses and legal function as fact finder. See Stobart, 617 So.2d at 882. Again, where there are two permissible views of the evidence, the choice of the finder of fact cannot be wrong. Stobart, 617 So.2d at 883. Thus, from this record, we cannot say that the jury was clearly wrong in its allocation of fault to DOTD.

DAMAGES
In its reasons for granting the additur, and alternatively a new trial, the trial court noted that Mr. Temple was a stoic witness and that the couple had a five-year relationship before their marriage. The court stated that the jury's award was "an abuse of discretion." In assigning error, DOTD argues that the jury award of $75,000.00 was not abusively low, and thus the additur and the subsequent grant of a new trial was error. Alternatively, DOTD argues that the JNOV was wrongly granted and the second jury award of $100,000.00 should be re-instated.
The role of the appellate court, and the trial court in a jury trial, is not to replace or second guess the jury and determine what the court thinks is an appropriate award of damages. The jury, or fact finder, has "much discretion" in the award of damages. La. C.C. art. 2324.1; Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La. 1993). The determination of an appropriate award is fact intensive, and dependent on the "particular injury to the particular plaintiff under the particular circumstances ...." Youn, 623 So.2d at 1261.
A trial court may offer an additur if the court finds that the jury award was so inadequate that the jury abused its discretion and a new trial should be granted. La. C.C.P. art. 1814. Thus, the decision to offer an additur rests on whether the grant of a new trial would be proper. Magee v. Pittman, 98-1164, p. 18 (La.App. 1 Cir. 5/12/00), 761 So.2d 731, 746, writ denied, XXXX-XXXX (La.9/22/00), *580 768 So.2d 31 and writ denied, XXXX-XXXX (La.9/22/00), 768 So.2d 602. However, an additur can be finally "entered only with the consent" of the non-moving, opposing party. La. C.C.P. art. 1814. If the opposing party rejects the additur, the new trial is held. Accardo v. Cenac, 97-2320, p. 7 (La.App. 1 Cir. 11/6/98), 722 So.2d 302, 306.
The fact that a determination on a motion for new trial involves judicial discretion, however, does not imply that the trial court can freely interfere with any verdict with which it disagrees. The discretionary power to grant a new trial must be exercised with considerable caution, for a successful litigant is entitled to the benefits of a favorable jury verdict. Fact finding is the province of the jury, and the trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility. A motion for new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury's factual determinations and must be viewed in that light. Thus, the jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence.
Davis v. WalMart Stores, Inc., XXXX-XXXX, p. 10 (La.11/28/00), 774 So.2d 84, 93 (emphasis omitted), quoting Gibson v. Bossier City General Hospital, 594 So.2d 1332, 1336 (La.App. 2 Cir.1991).
In other words, if the jury's award is within its range of discretion, an additur is not proper. See Accardo, 97-2320 at p. 9, 722 So.2d at 307. The appellate standard of review for the grant of a new trial on grounds involving the trial court's discretion is the same abuse of discretion standard. Magee, 98-1164 at p. 19, 761 So.2d at 746.
To begin, we interpret the trial court's remarks to mean that the grant was based on Code of Civil Procedure article 1972(1), the verdict was contrary to the law and evidence, or, under article 1973, the court found "good grounds therefore...." Therefore, the trial court exercised its discretion in its offer of the additur and subsequent grant of the new trial. See Davis, XXXX-XXXX at pp. 9-10, 774 So.2d at 93.
From our reading of the record, and consideration of the particular facts here, we can find no basis for the grant of a new trial, or additur. "The jury's verdict was supportable by a fair interpretation of the evidence." Davis, XXXX-XXXX at p. 12, 774 So.2d at 95. Thus, the award of $75,000.00 to a loving spouse, married one month, with no children, and no evidence of an unusually traumatic or extended reaction, was within the jury's range of discretion. Compare Magee, 98-1164 at pp. 20-21, 761 So.2d at 747-48 (award of $100,000.00 for spouse with a close relationship, and two children, during a thirteen-year marriage, was on low end, but acceptable); Jeffries v. Estate of Pruitt, 598 So.2d 379, 387 (La.App. 1 Cir.), writs denied, 599 So.2d 306 and 605 So.2d 1124 (La.1992) (award of $30,000 was not found to be abusively low for spouse with a two-year marriage, one-year relationship prior to marriage, and no children from the marriage); Arnold v. Illinois Central Gulf Railroad, 501 So.2d 778, 780 (La.App. 1 Cir.1986), writ denied, 503 So.2d 479 (La.1987) (award of $50,000.00 for spouse in a forty-two-year marriage, with two children and a close family "called for"). We agree that the five years the couple spent together before marriage was a factor to be considered in assessing the type of relationship that existed between them. However, wrongful death damages are provided by law only for a spouse, not unmarried couples. La. C.C. art. 2315.2
*581 A(1). Thus, the duration of the pre-marital relationship is not wholly determinative of the scope of the damages for this particular spouse, and did not render the jury's initial award abusively low.
For the foregoing reasons, we vacate the award of $250,000.00 to Mr. Temple and reinstate the original jury award of $75,000.00. In all other regards, we affirm the judgment. The costs of the appeal, $4,373.64, are assessed equally between Mr. Temple and DOTD.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.
GUIDRY, J., concurs.
NOTES
[1] For cases arising after July 9, 1999, the "evidence of failure to adhere to [a postconstruction] standard, regulation, or guideline shall not be admissible in a court proceeding for any purpose." La. R.S. 48:35 F(2).