896 So.2d 1136 (2005)
Arthur T. BROWN
v.
STATE of Louisiana.
Reid Butler and R & F Rolloff and Disposal, Inc.
v.
State of Louisiana through Department of Transportation and Development.
Nos. 04-CA-912, 04-CA-913.
Court of Appeal of Louisiana, Fifth Circuit.
February 15, 2005.
*1137 Arthur J. Brewster, Metairie, LA, for Plaintiff/Appellee-2nd Appellant.
Ronald W. Morrison, Metairie, LA, for Plaintiff/Appellee.
*1138 William S. Culver, Louisiana Department of Justice, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY, and WALTER J. ROTHSCHILD.
SOL GOTHARD, Judge.
These consolidated appeals arise from a vehicle accident that occurred on July 9, 1998 on Louisiana Highway 50 in St. Rose when a garbage truck, driven on a test drive by a newly hired driver, veered off the highway and overturned, causing severe injuries to both occupants. After a bench trial on the merits, the trial court found plaintiff Arthur Brown, who was driving the truck, 50% liable for the accident. The trial court further found defendant, State of Louisiana through the Department of Transportation and Development (DOTD), 50% at fault.
Two lawsuits arose from the accident. In the first, Arthur Brown, the truck driver, filed suit against DOTD, alleging the cause of the accident was a defective and dangerous condition in the roadway. The Louisiana Workers' Compensation Corporation (LWCC) filed a "Petition of Intervention" to recoup benefits paid to Mr. Brown under his workers' compensation. A second "Petition for Intervention" was filed by attorney Stephen Simone, for legal fees due in the case.
A separate suit was filed by Reid Butler, Mr. Brown's supervisor who was riding in the garbage truck as a passenger at the time of the accident. Mr. Butler also named DOTD as defendant. DOTD answered and made a counter claim against B & F Rolloff and Disposal, Inc. (B & F), the owner of the garbage truck. B & F made a counter claim against DOTD for property damage to the garbage truck. The two lawsuits were consolidated for trial by order of the trial court.
Before trial a stipulation was entered into by the parties that set forth the rights to recovery and the amounts thereof, by LWCC, should judgment be rendered against defendants. There was also an oral motion to dismiss any claims made by B & F. After the trial, the court rendered judgment denying the exceptions of no cause of action filed by DOTD, finding Mr. Brown and DOTD both at fault and assessing each 50% of the damages, and awarding damages to both Mr. Brown and Mr. Butler. The judgment further preserved LWCC's rights for recovery in accordance with the stipulations of the parties.

FACTS
The record shows that plaintiff, Arthur Brown, had been recently hired by B & F Rolloff and Disposal, Inc., a company managed by Reid Butler. On the day of the accident, Mr. Brown was participating in a driving test conducted by Mr. Butler. During the road test, Mr. Brown drove on the River Road to I-310 in the fully loaded truck. He continued on I-310 to Airline Highway, and then to Highway 50. According to testimony offered by the two occupants, the truck was headed southbound on Highway 50, when a truck with a "wide load" sign approached from the opposite direction. Because the approaching truck was over the centerline, Mr. Brown slowed down and moved to the side of the road to allow the truck to pass. The load shifted and the truck went onto the shoulder. Mr. Brown counter-steered to get the truck back onto the roadway. When he did so the right wheels of the garbage truck got hooked on the front edge of the roadway. Brown was able to steer the truck back onto the roadway; however, it *1139 spun around and overturned. Mr. Butler was thrown from the vehicle and Mr. Brown was pinned inside.
Paul Santangelo, Jr., who was an eye-witness to the accident, testified at trial. He stated that his place of business is on Highway 50 and it is used by many trucks each day. On the day of the accident he was standing in front of his business when he heard wheels squealing. He looked up and saw the garbage truck lean to the right. Mr. Santangelo stated that it appeared the truck "got hung off" the road to the right. When the load shifted from the right to the left, it pulled the truck into traffic. It appeared the driver tried to turn to compensate and the weight pulled the truck over and it slid into the ditch in front of Mr. Santangelo's office.
Mr. Santangelo testified, over an objection by DOTD, that he witnessed many prior accidents at the same place. He stated that he saw a large truck get "hung off" in the same way and spun completely around, ending up in the ditch. There was also a dump truck that went off the roadway in the same way and was unable to get back on. He further stated that he often heard the sound of mirrors on passing trucks hitting, and that he has had an oncoming truck hit his mirror as it passed. Mr. Santangelo also testified that he has driven a large truck on the road and gone off the end of the roadway while trying to avoid hitting the mirror of an oncoming truck. At that time he was pulled to the right, and had to compensate.
At the time of the accident in question herein, Mr. Santangelo saw Mr. Butler being thrown out of the window and landing in the ditch. Mr. Santangelo ran over to him to try to help. Mr. Butler was laying face down and asked to be turned over. Mr. Santangelo was reluctant to move him for fear that he may cause more injuries. At that time, Mr. Santangelo heard someone yell and realized Mr. Brown was pinned inside the garbage truck. His leg was pinned between the truck and the cement and he was hanging upside down into the ditch. There were some fluids running out of the truck, so Mr. Santangelo and others who were on the scene tried to use blankets to protect Mr. Brown.
Mr. Santangelo's son also testified that he was also a witness to the accident. He stated that he heard a noise and turned around to see the garbage truck coming toward him and crossing into oncoming traffic. It started to list to the left and soon turned over on its side and began to slide on the roadway toward him. He also has seen several accidents at that same spot. It stopped when it went into the ditch and hit a telephone pole on the other side.
Both Santangelos testified that Mr. Brown remained pinned under part of the truck for a long time before officers were able to free him with a wrecker. Mr. Brown remained conscious the entire time and was in great pain.
Robert Wegener, a maintenance engineer for DOTD, has direct supervision of the roadway in question. He does a general inspection of Highway 50 about every two or three months and was aware that the roadway has a drop-off on the west side. However, because of the slope of the ditch, there is no way to fix it. Mr. Wegener read from a memo dated February 1, 1989 written by a superior in DOTD. The memo describes how DOTD is often found liable for drop-offs in the roadway and that "edge ruts that are five inches or more should be assigned first priority on the work schedule." Mr. Wegener testified a *1140 DOTD maintenance guidelines manual now reflects that suggestion and is first priority on the work schedule to be done as soon as resources are available. Mr. Wegener was shown photographs of the drop-off that show it measures from seven to ten inches at the accident site. These photos also show an immediate slope into the ditch from the drop-off. Mr. Wegener stated he could not fix the drop-off at this site because it would continue to erode due to the lack of shoulder at the edge and the slope into the ditch.
Mr. Wegener testified that State Project Number XXX-XX-XXXX shows that, in 1997 the State had a prior project to overlay that area of the roadway to provide four-foot shoulders and an eighteen to twenty foot edge-to-edge roadway. That was not done however. He did admit that, because there was a seven inch drop-off at the site of the accident, its repair would be classified as a priority by DOTD.
Mr. Wegener testified that Highway 50 is a designated truck route and is meant for commercial traffic including large trucks.
Ernest Sanchez, a highway superintendent for DOTD whose duties include checking the roadway bi-weekly, testified that he is familiar with the area and has discussed the hazards presented to trucks using the roadway with Mr. Wegener on previous occasions. Mr. Sanchez suggested to superiors that the roadway should be widened and culverts should be put in the ditches, but has never received a response. Mr. Sanchez testified that there is a high volume of trucks using Highway 50, and the lack of shoulder on the highway at the point where the accident occurred is a definite hazard. He also stated the roadway is too narrow and there are base erosion problems on both sides of the roadway, forcing vehicles onto a slope leading to a ditch as soon as the wheels leave the surface of the roadway.
Reid Butler, who was a passenger in the garbage truck when it overturned, testified that he is the operations manager for B & F Rolloff, Inc. As part of his job he was conducting a road test with a new employee, Arthur Brown, when the accident happened. Mr. Butler testified that he is an experienced garbage truck driver and has driven one on Highway 50 many times.
Mr. Butler explained that about one week before the accident, he conducted a telephone interview with Mr. Brown, in which he took Mr. Brown's driver's license information and prior work experience. After checking Mr. Brown's references and running a motor vehicle check, Mr. Butler conducted a driving test on the day of the accident. Mr. Butler parked the truck in a difficult place from which to back out. When Mr. Brown successfully backed out, Mr. Butler took him on the road for further testing. Mr. Brown left the company yard on Oaklawn in St. Rose and proceeded upriver on the River Road. He offered Mr. Brown the job, and told him to take I-310 and Airline Highway back to the company's yard. To get there they drove on Highway 50 at top speed of about 30 mph, slowing at the railroad crossing. As they proceeded southbound on Highway 50, an oncoming truck approached, which Mr. Butler described as a "low boy", towing a trailer with a piece of heavy equipment. Mr. Butler slowed down and moved over to the side. As he did the right front tire hooked on the edge of the road and Mr. Butler felt the truck was going to turn over. Mr. Brown steered to the left and the back wheels hooked on the edge. When the back wheels came off of the edge, the back *1141 tandem began to spin. Because the truck was hanging past the shoulder leaning into the ditch, it caught and the truck shot across the road. Mr. Brown steered to the right to avoid hitting a light pole and caught the edge of the road again causing the truck to overturn and slide into the ditch.
Mr. Butler stated that the truck was fully loaded for the road test with about 50,000 pounds of garbage. The garbage is purposely loaded in such a way to be sure the weight stays at the bottom of the truck.
Mr. Butler further testified that the mirrors were angled in a position to allow him to see the wheels of the truck on his side get hooked on the edge. Mr. Butler stated that he was satisfied with Mr. Brown's driving. He further stated that he is familiar with that road and has bumped mirrors with passing trucks on occasion because the roadway is too narrow. Mr. Butler testified that Mr. Brown did nothing wrong in the accident and reacted as any experienced commercial driver would.
When the truck overturned, Mr. Butler was thrown through the windshield and into the ditch. When he regained consciousness, Mr. Butler heard Mr. Brown scream for help. About 45 minutes later Mr. Butler was removed from the ditch and taken to Kenner Regional Hospital by ambulance. He remained in the hospital for four days and subsequently had to have surgery on his knee and neck. Mr. Butler stated that he is still under doctors' care for pain.
Mr. Butler testified that he had given Mr. Brown a job before the accident at the rate of $10.00 per hour, and expected him to work 45 to 55 hours per week.
The trial court also heard testimony from Duaine Evans, plaintiffs' expert in the field of traffic engineering and roadway safety who personally inspected the roadway at the accident site. He testified that the drop-offs in that area range from 8.5 to 11 inches, posing an extreme hazard to motorists. The lanes of traffic on the roadway are only nine feet wide, inadequate to allow safe passage for the volume of trucks using the road. Further, he opined that the narrow lanes coupled with the inadequate shoulders could cause vehicles to be pulled off the road.
DOTD presented testimony from David Hall, an expert in traffic engineering and accident reconstruction. Mr. Hall acknowledged that Highway 50 has no shoulders, but opined the roadway is acceptable as it is. He further stated that the slopes and ditch next to the roadway are necessary for drainage. Mr. Hall cited driver error as the cause of the accident, maintaining that Mr. Brown over-corrected when he drove too close to the edge of the roadway. Mr. Hall disagreed with plaintiffs' witnesses that a seven inch drop-off at the edge of the roadway is unsafe.
DOTD and Arthur Brown have filed appeals in this Court, and Reid Butler has answered the appeal. In brief to this Court DOTD assigns two errors. It contends the trial court erred in its finding of liability and fault on the part of DOTD, and that the court erred in allowing testimony regarding prior accidents at the site. Both Mr. Brown and Mr. Butler assign the apportionment of fault for Mr. Brown at 50% as error. In addition, Mr. Brown argues he was not at fault in the accident and assigns four additional errors which relate to damages awarded.

LIABILITY
La. R.S. 9:2800 provides that, in order for the DOTD to be held liable under *1142 either a negligence or strict liability theory, the plaintiff must prove that (1) the DOTD had custody of the thing which caused plaintiffs' damages, (2) the thing was defective because it had a condition which created an unreasonable risk of harm, (3) the DOTD had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time, and (4) the defect was a cause-in-fact of plaintiffs' injuries. This Court, in Woodbury v. Dept. of Transp. and Develop., 03-13, 14 (La.App. 5 Cir. 5/28/03), 848 So.2d 104 recently summarized the law in this area:
In determining whether liability exists under a duty-risk analysis, a plaintiff must prove that the conduct in question was the cause-in-fact of the resulting harm, that defendant owed a duty to plaintiff which defendant breached and that the risk of harm was within the scope of protection afforded by the duty breached. The DOTD has a duty to maintain the public highways in a condition that is reasonably safe for persons exercising ordinary care and reasonable prudence. This duty extends to the shoulders of highways as well. The highway department's duty to maintain safe shoulders encompasses the foreseeable risk that for any number of reasons, including simple inadvertence, a motorist might find himself traveling on, or partially on, the shoulder. This duty extends to drivers who are slightly exceeding the speed limit or momentarily inattentive. As to the area off the shoulder of the road, but within the right of way, DOTD owes a duty to maintain the land in such a condition that it does not present an unreasonable risk of harm to motorists using the adjacent roadway or to others, such as pedestrians, who are using the area in a reasonably prudent manner. Whether DOTD breached its duty, that is, whether the roadway at the scene of the accident was in an unreasonably dangerous condition, will depend on the facts and circumstances of the case.

Id. 848 So.2d at 108-109
(Citations omitted)
The applicable standard for our review of the trial court's finding of facts is the manifest error/clearly wrong standard. Rosell v. ESCO, 549 So.2d 840 (La.1989). The Louisiana Supreme Court has set forth a two-part test for reversal of the trial court on a finding of fact. This Court must find from the record that the factual finding of the trial court is without a reasonable factual basis; and, this Court must make a determination from the record that the factual finding is not clearly wrong. Mart v. Hill, 505 So.2d 1120 (La.1987). We must conduct a thorough review of the record and the facts presented to the trial court to be certain a reasonable factual basis exists for the findings of fact. However, when conflict exists in the testimony, this Court may not disturb the reasonable factual finding even though we may feel our evaluations and inferences are more reasonable than those of the factfinder. Rosell v. ESCO, Supra.
The crux of DOTD's argument to this Court is that the trial court's factual findings are unreasonable. It offers evaluations and inferences of the testimony offered by witnesses that differs from those made by the trial court. In Paul Santangelo's testimony, DOTD places significance on the fact that Mr. Santangelo does not mention seeing the oncoming truck that supposedly forced Mr. Brown's truck off the road. DOTD further notes that, although Mr. Santangelo testified over a *1143 defense objection that other accidents happen in that area, he did not report them to DOTD, nor did he witness any since the accident in question. DOTD also takes issue with the testimony of plaintiffs' experts and that of DOTD personnel used by the trial court as a basis for the factual finding. DOTD cites testimony of Mr. Wegener and Mr. Sanchez to show that DOTD could not provide a shoulder on the roadway in question because there is no room for one. Mr. Sanchez also testified that there is a base erosion problem at that site, and that he tries to line the roadway with asphalt on the ditch slope when necessary. DOTD also reminds this Court of the testimony of its expert and his finding that the roadway was adequate and not a cause of the accident.
The trial court gave extensive written reasons for judgment. As to DOTD the court all of the above listed elements necessary for a finding of liability on the part of DOTD. It was undisputed that DOTD is responsible for the maintenance and upkeep of the roadway. The trial court found the roadway was defective because it had a condition that created an unreasonable risk in that Mr. Sanchez acknowledged the area was dangerous due to the drop-off, and had warned superiors of the hazard before. The court further noted that he did not find the testimony of DOTD's expert witness, that the roadway as it existed was not unreasonably dangerous, persuasive. The trial court found constructive knowledge on the part of DOTD in the testimony of Mr. Sanchez and the warnings he gave superiors about the hazardous condition of the roadway at the site of the accident. As to causation, the trial court noted that the defect contributed to the accident and was a cause-in-fact of plaintiffs' injuries. The trial court stated:
... Specifically, the drop-off resulted in Mr. Brown's having to over-correct to attempt to re-enter the highway. This maneuver resulted in the load shifting, the truck overturning, and plaintiffs' injuries.
The facts presented and accepted by the trial court show clearly that the roadway, designated as a commercial truck route was too narrow for that purpose, and had no shoulders. Photographs of the area show a seven to ten inch drop-off of the roadway that slopes directly into a ditch. Documents entered into evidence show that DOTD was aware of the defective roadway and was in violation of its own guidelines in failing to fix the problems. Given the applicable standard of review, the facts presented in this case and the well written reasons for judgment contained in the record, we find no manifest error in the trial court's determination that DOTD was at fault in the accident.
DOTD also argues that Mr. Santangelo should not have been allowed to testify regarding prior accidents at the site.
The trial court also found Mr. Brown at fault. It stated:
However, the Court finds that the driver, Mr. Brown, was also negligent in causing the accident in that he failed to use reasonable care in the operation of the garbage truck. The Court finds that Mr. Brown was negligent in not slowing his vehicle as he went off the roadway, in not regaining control of his truck before re-entering the roadway, and in failing to maintain control of his vehicle.
In brief to this Court, Mr. Brown argues the trial court erred in finding him at fault in the accident. Mr. Brown argues that he was unable to stop once his truck went off the roadway because there was no shoulder on which to stop. He further argues *1144 that expert testimony, taken as credible by the trial court, shows that he was unable to slow down and gradually return to the roadway because the shoulder was inadequate and it drops off into a ditch. In conclusion Mr. Brown argues that, given the evidence taken as credible by the trial court and the photographs used to support the testimony, he could not have been expected to bring his dual wheeled commercial vehicle to a stop or get it under control on the sloping surface that abuts the roadway.
The duty of a driver is to be reasonably observant of conditions that either might affect the operation or use of their vehicles that would pose an unreasonable risk of harm to others. Faulkner v. State, Dept. of Transportation & Development, 25,857 (La.App. 2 Cir. 10/26/94), 645 So.2d 268. This duty includes using vehicles reasonably and maintaining a proper lookout for hazards which might pose an unreasonable risk of harm. Id.; Holt v. State, Department of Transportation and Development, 28,183 (La.App. 2 Cir. 4/3/96), 671 So.2d 1164.
In Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985), the Louisiana Supreme Court set forth the following guidelines for determining the percentage of fault to be allocated among tortfeasors:
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.

Id. 469 So.2d at 974
See also, Joseph v. Broussard Rice Mill, Inc., XXXX-XXXX (La.10/30/00), 772 So.2d 94.
The allocation of fault is a factual finding, and deference must be afforded the trier of fact. In that regard the Supreme Court has stated, "the trier of fact is owed some deference in allocating fault, for the finding of percentages of fault pursuant to the comparative fault article, La. Civ.Code art. 2323, is also a factual determination." Clement v. Frey, 95-1119 (La.1/16/96), 666 So.2d 607 at 610 (footnote omitted).
Being mindful of the standard of review as set forth herein, we cannot find that the trial court was manifestly erroneous is finding Mr. Brown partially at fault.

DAMAGES
In its judgment the trial court cast DOTD in judgment for damages to both Arthur Brown and Reid Butler. To Brown, the court awarded $200,000.00 for past, present, and future pain and suffering, $72,368.24 for past medical expenses, $30,000.00 for future medical expenses and $100,000.00 for loss of earning capacity. To Mr. Butler, the court awarded $300,000.00 for past, present, and future pain and suffering, $126,813.18 for past medical expenses, and $30,000.00 for future medical expenses. Both awards were reduced by 50% to reflect the fault of Mr. Brown.
*1145 Mr. Brown assigns several errors regarding the award of damages. In the first he argues the trial court erred in failing to award lost wages from the date of injury to the day of trial.
To recover for actual wage loss, a plaintiff must prove that he would have been earning wages but for the accident in question. It is the plaintiff's burden to prove past lost earnings and the length of time missed from work due to the accident. Boyette v. United Services Automobile Assoc., XXXX-XXXX (La.4/3/01), 783 So.2d 1276, 1279.
Evidence presented shows that Mr. Brown was hired at a rate of $10.00 an hour for a 45 to 55 hour work week. Also introduced into evidence is documentation showing that plaintiff earned $10,429.34 the year before the accident. The trial court used the above figures in awarding loss of future earnings. Further, there is no real issue regarding the causal link between the accident and the inability to work.
Although the record shows that Mr. Brown received workers' compensation, the trial court recognized a lien in favor of the Louisiana Workers' Compensation to recover the amount paid from the sums recovered by Mr. Brown. We believe the plaintiff is entitled to lost wages and the record contains sufficient evidence to support an award of lost wages in the amount of $35,078.75. Accordingly, we hereby award that amount, reduced by the percentage of Mr. Brown's degree of fault.
Mr. Brown also argues that the lien for workers' compensation should have been reduced by the percentage of Mr. Brown's fault. La. R.S. 23:1101(b) provides as follows:
Any person having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit against such third person to recover any amount which he has paid or becomes obligated to pay as compensation to such employee or his dependents. The recovery allowed herein shall be identical in percentage to the recovery of the employee or his dependents against the third person and, where the recovery of the employee is decreased as a result of comparative negligence, the recovery of the person who has paid compensation or has become obligated to pay compensation shall be reduced by the same percentage.
In accordance with the above statutory provision, we reduce the amount of the intervenor's lien by 50%, the percentage of fault assessed by Mr. Brown.
The remainder of Mr. Brown's assertions regarding damages relate to the $30,000.00 award for future medicals and the $200,000.00 award for general damages.
The standard for our review of these damages was set forth by the Louisiana Supreme Court in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The Youn court mandated that we must first make a determination of an abuse of discretion in the award of damages before considering other awards. Specifically the Youn court explained:
... discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the *1146 measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.

Id. 623 So.2d at 1260
Our review of the record and the awards under the above standard compels us to affirm the awards. We cannot find that either award, under the particular circumstances of the case, is beyond that which a reasonable trier of fact could assess. Thus, we find no abuse of discretion.
For the foregoing reasons, the judgment of the trial court is amended to add an award for lost wages in the amount of $38,078.75 and to reduce the lien on the judgment in favor of the intervenor by 50%. In all other aspects the judgment of the trial court is affirmed.
AMENDED AND AS AMENDED, AFFIRMED