# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-419 C/W
## 11-420 & 11-421


**ROGER VESTAL, EMANUEL HAMMONDS, AND
JOHNNIE O'HARA**

**VERSUS**

**CYNTHIA D. KIRKLAND, SCHNEIDER NATIONAL CARRIERS, INC.
AND INS INSURANCE COMPNAY**


**\*\*\*\*\*\*\*\*\*\***
APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, DOCKET NO. C-2007-455, C/W
C-2007-566 & C-2007-567
HONORABLE H. WARD FONTENOT, DISTRICT JUDGE
**\*\*\*\*\*\*\*\*\*\***


**SYLVIA R. COOKS
JUDGE**


**\*\*\*\*\*\*\*\*\*\***


Court composed of Sylvia R. Cooks, James T. Genovese, and Phyllis M. Keaty, Judges.


**AFFIRMED**.


**W. Jay Luneau
1239 Jackson Street
Alexandria, LA 71301
(318) 767-1161
COUNSEL FOR PLAINTIFF/APPELLEE:**
      **Cynthia D. Kirkland**

**D. Randolph Street
Street & Street
508 North 31st Street
Monroe, LA 71201
(318) 325-4418
COUNSEL FOR PLAINTIFF/APPELLEE:**
      **Johnnie O'Hara.**

**C. David Vasser, Jr.**
**Vasser & Vasser**
**516 Myrtle Hill Drive**
**Baton Rouge, LA 70810**
**(225) 767-0352**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
      **Liberty Mutual Fire Ins. Co. and Schneider National Carriers, Inc.**


**James D. "Buddy" Caldwell, Attorney General**
**Elizabeth B. Hollins, Assistant Attorney General**
**Louisiana Department of Justice, Litigation Division**
**One Lakeshore Drive, Suite 1200**
**Lake Charles, LA 70629**
**(337) 491-2880**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **State of Louisiana, DOTD**

**COOKS, Judge.**

On November 27, 2006, Cynthia Kirkland was driving a 2006 Freightliner eighteen-wheeler owned by her employer, Schneider National Carriers. She was returning from the Proctor & Gamble plant in Pineville, Louisiana, where she had picked up a trailer loaded with soap products. She was driving south on Louisiana Highway 165 in Allen Parish when she observed an accident ahead of her. At this point on Hwy. 165, the road was undergoing construction to change from two to four lanes. The north-bound construction was completed, but the south-bound construction was about to begin.

The accident in front of her involved another eighteen wheeler that had lost a load of lumber. Kirkland began slowing her vehicle. While doing so, her eighteen wheeler drifted onto the two-foot wide shoulder. There was a difference in elevation between the shoulder and roadway. When Kirkland's truck left the roadway, she attempted to reenter the roadway by decelerating the vehicle and attempting to steer back onto the paved portion of road. According to Kirkland, due to the elevation difference between the shoulder and roadway, she encountered difficulty. When her steering axle tires finally got back up on the roadway, the vehicle yawed, jack knifed, and overturned onto the passenger side. Kirkland's vehicle came to rest on top of a vehicle occupied by Johnnie O'Hara. Kirkland and O'Hara suffered injuries as a result of the accident.

Kirkland filed proceedings against the State of Louisiana, Department of Transportation and Development (hereafter DOTD), alleging failure to maintain a reasonably safe roadway, failure to properly maintain the shoulder, and failure to warn of an unreasonably dangerous condition. Specifically, Kirkland maintained the accident occurred because of a drop-off where the roadway meets the shoulder, which was composed of aggregate.

Suit was also filed against DOTD by Kirkland's employer, Schneider National Carriers, and its insurer, Liberty Mutual Fire Insurance Company, seeking reimbursement for workers' compensation benefits, both indemnity and medical, paid to Kirkland.

O'Hara also sued Kirkland, her employer and insurer, and DOTD. O'Hara's claims against all parties other than DOTD were settled prior to trial. O'Hara's claims against DOTD included the failure to maintain a reasonably safe roadway, failure to properly design, construct or maintain the shoulder, constructing or maintaining the shoulder with an excessive drop-off, and the failure to warn of an unreasonably dangerous condition.

The three separate lawsuits were consolidated for trial. After a trial, the jury returned judgment finding DOTD 80% at fault in causing the accident and Kirkland was cast with the remaining 20% of fault. Kirkland was awarded $235,440.00 in general damages and $1,600.00 in future medicals (which reflected the reduction of 20% for her fault). O'Hara was awarded $480,000.00 in general and special damages (which reflected the reduction of 20% for Kirkland's fault). O'Hara's award included $18,418.00 in loss of future wages and loss of future earning capacity.

Both Kirkland and O'Hara filed for Judgments Notwithstanding the Verdict (JNOV) to increase the amounts awarded. O'Hara contended the jury erred in only awarding him $18,418.00 in loss of future wages and earning capacity. Kirkland argued the jury erred in refusing to award amounts proven for past wage loss and future wage loss and earning capacity. The trial court granted O'Hara's JNOV and awarded an additional $300,000.00 for future wage loss and loss of earning capacity. Kirkland's award was not changed.

The judgment also provided the intervention filed by Kirkland's employer, Schneider National Carriers, and its insurer, Liberty Mutual, was granted with the amount to be established pursuant to a Rule to be filed at a later date.

On appeal, DOTD asserts the following assignments of error:

1.    The trial court erred in finding DOTD eighty percent liable in this accident, when the alleged defect was not the cause-in-fact of the motorists' injuries.

2.    The trial court erred in allowing the introduction of prejudicial evidence, maintenance records for the highway following the accident, which was not relevant or necessary to prove the plaintiffs' case.

3.    The trial court erred in disallowing the testimony and evidence of the State's accident reconstruction expert without a valid or reasonable basis.

4.    The trial court erred in granting O'Hara's JNOV and increasing the future wage loss and loss of earning capacity award as the jury's award was not manifest error considering the testimony.

5.    The trial court properly awarded Kirkland damages for past lost wages when the testimony as a whole is considered.

Kirkland answered DOTD's appeal, and alleged as error the jury's failure to award the amounts proven for past and future wage loss, as well as loss of earning capacity.

## I.    Liability of DOTD.

The jury returned a verdict in which it found DOTD 80% at fault and Kirkland 20% at fault.   DOTD argues it was Kirkland's driving, and not the defect presented by the shoulder, that was the cause-in-fact of the motorists' injuries. Conversely, the plaintiffs aver that the jury's verdict is well-supported by the evidence.

DOTD has a legal duty to maintain the public highways in a reasonably safe condition.  *Sinitiere v. Lavergne*, 391 So.2d 821 (La.1980).  This duty extends to the shoulders of the highways as well.  *Graves v. Page*, 96-2201 (La. 11/7/97), 703 So.2d 566; *Myers v. State Farm Mut. Auto. Ins. Co.*, 493 So.2d 1170 (La.1986);

3

*Rue v. State, Dep't. of Highways*, 372 So.2d 1197 (La.1979). DOTD's duty to maintain safe shoulders encompasses the foreseeable risk that for any number of reasons, "whether as a result of inattentiveness or negligence," a motorist might find himself traveling on, or partially on, the shoulder. *Petre v. State ex rel. Dep't. of Transp. and Dev.*, 01-876, p. 8 (La. 4/3/02), 817 So.2d 1107, 1112. DOTD's duty to maintain the road and shoulder encompasses the risk that a motorist may travel onto or partially onto the shoulder. *See Graves v. Page*, 96-2201 (La. 11/7/97), 703 So.2d 566. However, in recognizing the existence of this duty, this court has held that DOTD is not a guarantor of the safety of those who travel highways of this state. *See Ryland v. Liberty Lloyds Ins. Co.*, 93-1712 (La. 1/14/94), 630 So.2d 1289. DOTD's duty to the traveling public is breached only when the highway at the scene of the accident is found to create an unreasonably dangerous condition. *Petre*, 775 So.2d 1107. DOTD's duty to maintain reasonably safe roadways encompasses persons who are foreseeably placed in danger by unreasonably dangerous conditions. Under our comparative negligence system, even motorists who are slightly exceeding the speed limit, momentarily inattentive, or otherwise negligent may recover from DOTD. *Petre*, 775 So.2d at 1259-60, citing *Lamaire v. Motor Convoy, Inc.*, 625 So.2d 638 (La.App. 3 Cir.1993), *writ denied*, 93-2778 (La.1/7/94), 632 So.2d 754.

Whether a defect presents an unreasonable risk of harm must be decided on the particular facts and circumstances of each case. *See Hunter v. Dep't. of Transp. and Dev.*, 620 So.2d 1149 (La.1993). The jury's determination in this regard is factual in nature. We evaluate findings of the trier of fact under the manifest error or clearly wrong standard. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Under the manifest error standard, a factual finding cannot be set aside unless the appellate court finds that the trier of fact's determination is manifestly erroneous or clearly wrong. *Stobart v. State, Department of Transportation and*

4

*Development*, 617 So.2d 880 (La.1993). In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and find that a reasonable factual basis does not exist for the finding and that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *Id.*

The appellate court is not to re-weigh the evidence or substitute its own factual findings because it would have decided the case differently. *See Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 01-2217 (La. 4/3/02), 816 So.2d 270. Where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong, even if the reviewing court would have decided the case differently. *Stobart*, 618 So.2d 880. Louisiana courts have consistently held that causation is a factual finding, which should not be reversed on appeal absent manifest error. *Id.* The issue to be resolved is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. *Cosse v. Allen-Bradley Co.*, 601 So.2d 1349 (La.1992). Thus, even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where testimony conflicts. *Id.*

Initially, we note DOTD acknowledged it had custody of the highway where the accident occurred. Further, the record confirmed the highway was accepted by DOTD from the construction company prior to the accident, as evidenced by a formal acceptance document signed five days before the accident.

After a thorough review of the record, we find ample evidence was presented to the jury for it to conclude the drop-off between the roadway and shoulder was a cause-in-fact of the accident. The jury chose to place more credibility in the Plaintiffs' expert rather than DOTD's expert, which is well within its province as the trier of fact.

5

Duane Evans, who was a qualified expert in highway design and reconstruction, testified for Plaintiffs. He found the shoulder and the aggregate next to it were not level, and exhibited a drop-off in the area of the accident anywhere from four to ten inches. Mr. Evans specifically testified "[i]f there's a significant drop-off of four inches, for instance, it can affect your steering and cause you to either go toward the ditch or jump back onto the road and not be headed in the right direction." He also stated a four inch or greater drop-off required immediate attention and should be handled on an emergency basis. Mr. Evans also told the jury that, as per DOTD plans, in the area where the accident occurred, there should have been a slope of four to one (meaning for every one foot of slope there should be four feet of road). However, he stated the slope was approximately two to one, which created a "serious slope," one which he believed was "non-recoverable." He further explained that "a vehicle that gets on [such a slope] generally will be out of control." He opined that once Kirkland "lost control on the slope, the drop-off prevented her [from] recovering that control," and that led to her vehicle yawing when it reentered the roadway, and eventually spinning out of control and overturning.

DOTD attempts to lessen the impact of Mr. Evans testimony by noting he made no measurements at the scene and relied simply on photographs to determine the amount of drop-off and slope. However, Mr. Evans testified he relied on the photographs because, when he went to the accident scene, DOTD had already begun further construction on the south-bound lanes, and the construction had significantly changed the shoulder area. He also informed the jury that experts in similar cases often rely on scene photographs, because they rarely get to the scene until months or even years after the accident. The jury undoubtedly did not place much weight on this fact in judging the credibility of Mr. Evans' testimony, particularly considering DOTD's expert, Joseph Blashke, relied on the same

6

photographs in making his conclusions, acknowledging when he visited the accident site, it looked "nothing" like it did on the date of the accident.

Mr. Blashke, who was also qualified as an expert in highway design and reconstruction, testified that Kirkland's actions were the sole cause of the accident. He believed Kirkland overreacted to leaving the roadway and responded before she fully left the roadway, causing the tractor-trailer to lose control. Mr. Blashke did not believe Kirkland's version of how she left the roadway and her actions thereafter. Unfortunately for DOTD, the jury chose to believe Kirkland and her expert, Mr. Evans. Mr. Blashke acknowledged on cross-examination that he gave his opinion as to what caused the accident before ever reading the testimony of the eye-witness accounts of the accident. Mr. Blashke also testified he was not sure what the actual slope of the road was, and even testified in his deposition that the slope "did not appear to be as flat as four to one" as is appropriate. Further, when asked "[w]ould you venture a guess that the slope might be closer to two to one than it is to four to one or would you disagree with that statement?," Mr. Blashke responded "I can't disagree." He also acknowledged that a two to one slope is "considered to be non-recoverable."

DOTD relies heavily on the measurement made by State Trooper Farris that Kirkland's tractor-trailer was off the road for approximately 61 feet, to support Mr. Blashke's opinion that the accident was primarily caused due to Kirkland's "obvious over-correction" and "significant over-steering." However, as Trooper Farris testified, he was not trained in accident reconstruction and acknowledged he did the best he could with the information available, but his measurement was not exact. The jury also heard the testimony of Mr. Evans that he believed Kirkland's vehicle may have been more than 61 feet off the road. Mr. Evans also testified that even if Kirkland had gone off the road only 61 feet, she could have had enough

time to input steering. Thus, the jury was provided with conflicting evidence from which to choose.

The testimony and photographs in the record confirmed the drop-off in the area of the accident was between four and six inches. The court in *Everhardt v. Louisiana Department of Transportation & Development*, 07-981, p. 19 (La.App. 4 Cir. 2/20/08), 978 So.2d 1036, 1050, noted the multitude of cases finding such a significant drop-off from the roadway to the shoulder constitutes a defect in the roadway and, as such, presents an unreasonable risk of harm:

> Louisiana jurisprudence is replete with cases holding that a drop-off from the roadway to the shoulder in excess of four inches constitutes a defect in the roadway and presents an unreasonable risk of harm to the traveling public. See *LeBlanc v. State of Louisiana*, 419 So.2d 853 (La.1982)(four to six-inch drop off of the shoulder created a dangerous hazard); *Perez v. State of Louisiana, Through the Dept. of Transp. and Dev.*, 578 So.2d 1199 (La.App. 4 Cir.1991)(roadway was defective because it had an eight-inch drop from the road to the shoulder and state held to be 40% negligent); *Roberts v. State, Through the Dept. of Transp. and Dev.*, 576 So.2d 85 (La.App. 2 Cir.1991)(three to five-inch drop off constituted an unreasonably dangerous condition); *Brown v. State, Through the Dept. of Transp. and Dev.*, 04-912 (La.App. 5 Cir. 2/15/05), 896 So.2d 1136 (DOTD found liable for accident involving seven to ten-inch drop off); *Aday v. State, Through the Dept. of Transp. and Dev.*, 06-1181 (La.App. 3 Cir. 2/7/07), 950 So.2d 928 (summary judgment granted on the issue of liability in favor of motorists on grounds that a shoulder with a four-and-one-half inch drop off constituted a defect in the shoulder); *Bozeman v. State, Through the Dept. of Transp. and Dev.*, 34,430 (La.App. 2 Cir. 4/4/01), 787 So.2d 357 (a three-inch drop off presents an unreasonable risk of harm); *Guzman v. State, Through the Dept. of Transp. and Dev.*, 95-0957 (La.App. 1 Cir. 12/15/95), 664 So.2d 1343 (a three-inch drop off found to constitute a defect with the state being held 50% liable); *Hood v. State, Through the Dept. of Transp. and Dev.*, 587 So.2d 755 (La.App. 2 Cir.1991)(a four-inch shoulder drop off deemed unreasonably dangerous to normal use); *Caruthers v. State, Through the Dept. of Transp. and Dev.*, 97-1450 (La.App. 3 Cir. 4/15/98), 711 So.2d 420 (generally, a roadway is considered defective and unreasonably dangerous when the depth of its drop off exceeds two inches).

After a thorough review of the testimony and evidence presented to the jury, we find no error in its conclusion that the roadway was defective and presented an

unreasonable risk of harm. Thus, we affirm the jury's finding that DOTD was eighty percent at fault in causing this accident.

## II.   *Admission of Maintenance Records.*

In its second assignment of error, DOTD contends the trial court erred when it admitted certain maintenance records for the highway following the accident. Specifically, DOTD argues the introduction of this "prejudicial evidence" inflamed the jury and was not even necessary to prove plaintiffs' case. However, the record established DOTD failed to make a contemporaneous objection when the documents were introduced. "To preserve an evidentiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence or testimony, and state the reasons for the objection." *LaHaye v. Allstate Ins. Co.*, 570 So.2d 460, 466 (La.1990); *see also Ewing v. State ex rel. Dep't. of Transp. and Dev.*, 99-1556 (La.App. 3 Cir. 3/15/00), 757 So.2d 843; *Himel v. State ex rel. Dep't. of Transp. and Dev.*, 04-274 (La.App. 5 Cir. 10/12/04), 887 So.2d 131, *writ denied*, 04-2802 (La. 3/18/05), 896 So.2d 999. Failure to object to the introduction of evidence constitutes a waiver of right to object on appeal. *LaHaye*, 570 So.2d 460. Thus, we find no merit in this assignment.

## III.   *Exclusion of Expert's Testimony.*

In its next assignment of error, DOTD contends the trial court erred in "disallowing the testimony and evidence of the State's accident reconstruction expert without a valid or reasonable basis." Presumably, DOTD refers to the testimony of Marshall Lyles, although no name is ever listed in DOTD's brief. Plaintiffs filed a motion in limine seeking to have the trial court exclude the testimony of Lyles. Following a hearing, the trial court granted the motion finding that Lyles' testimony would be speculative because he used several "default values" which may or may not have been accurate, and he failed to identify the

studies, surveys, treatises or other documents used to support his opinions. Combining this with the fact that the trial court believed Lyles' testimony would be cumulative, as the State presented other accident reconstruction experts, the trial court granted the motion in limine and excluded Lyles' testimony.

The law is clear when a trial court excludes or limits the testimony of a witness, a proffer can be made. La.Code Civ.P. art. 1636. It is incumbent upon the party who contends its evidence was improperly excluded to make a proffer, and if it fails to do so, it waives its right to complain of the exclusion on appeal. *Fontenot v. Fontenot*, 621 So.2d 843 (La.App. 3 Cir.1993), *rev'd on other grounds*, 93-2479 (La. 4/11/94), 635 So.2d 219; *Goodwin v. Goodwin*, 618 So.2d 579 (La.App. 2 Cir.), *writ denied*, 623 So.2d 1340 (La.1993). Our review of the record confirms that the trial court specifically asked all parties if they required any proffers to be made. The purpose of a proffer is to preserve evidence excluded by the trial court so that the evidence is available for appellate review. *McLean v. Hunter*, 495 So.2d 1298 (La.1986). DOTD did not proffer Lyles' testimony, therefore, we have no way of knowing what his testimony would have been. Accordingly, it is precluded from complaining that his testimony was excluded.

## IV.   *Grant of JNOV in Favor of O'Hara.*

DOTD argues the trial court erred in granting O'Hara's JNOV and increasing his future wage loss and loss of earning capacity award from $18,418.00 to $300,000.00.

The record established O'Hara was a passenger in the right passenger seat of the vehicle which was struck by Kirkland's eighteen-wheeler. He suffered serious injuries as a result of the accident, including lower back injuries which required two-level lumbar fusion surgery. The record established O'Hara incurred $147,000.00 in medical expenses, all of which were stipulated to be related to the accident. He was unable to work for a lengthy period of time, and has been unable

10

to return to his duties as a pipefitter due to the physical limitations brought about by the injuries suffered in the accident.

The testimonies of Dr. Bernie McHugh, the neurosurgeon who performed O'Hara's fusion surgery, and Dr. John Ledbetter, O'Hara's pain management physician, were steadfast that O'Hara would be unable to return to pipefitting or similarly physically demanding work. Dr. McHugh opined that O'Hara would be unable to engage in "heavy lifting, climbing, carrying heavy things . . . excessive bending and stooping and squatting." Any employment he engaged in would have to allow for frequent position changes. O'Hara testified his employment history included jobs as a pipefitter, welder, and truck driver. The medical testimony clearly established he would be unable to work in any of these positions in the future because of his injuries.

Dr. Charles Bettinger, an expert in the field of economics and statistics, conducted an economic analysis of O'Hara's past and future earnings losses. In calculating the future economic loss, Dr. Bettinger based his figures on the assumption that O'Hara would be able to return to full-time work earning entry level wages. Subtracting those prospective wages from what O'Hara would have earned working as a pipefitter, Dr. Bettinger calculated the future loss of earning capacity to be slightly in excess of $600,000.00.

DOTD notes that while the case was pending, O'Hara pled guilty to Illegal Possession of a Firearm, a felony. Counsel for O'Hara filed a motion in limine in an attempt to keep evidence of this conviction from the jury. The trial court denied the motion in *limine.* In lieu of O'Hara's plea, Dr. Bettinger was requested to revise his calculations to delete five years of future earnings to reflect the maximum term of imprisonment to which O'Hara was potentially subject. O'Hara argues there was no evidence presented at trial that indicated a felony conviction

11

would have prevented him from earning wages in the future, other than during any possible period of incarceration.

In its verdict, the jury determined O'Hara *was entitled* to an award for loss of future earning capacity, but rendered only $18,418.00, which was significantly below any amount testified as appropriate by Dr. Bettinger. O'Hara then filed for JNOV, contending the jury failed to make a reasonable award for his loss of future earnings and loss of earning capacity. The trial court agreed and granted the JNOV, finding the evidence pointed so overwhelmingly in favor of O'Hara that reasonable and fair-minded jurors in the exercise of impartial judgment should have concluded O'Hara suffered a greater loss of future earnings and loss of earning capacity than $18,418.00. The trial court raised the award to $300,000.00.

Louisiana Code of Civil Procedure Article 1811 provides for the trial court's use of a JNOV as being "warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict." *Forbes v. Cockerham*, 08-762, p. 30 (La. 1/21/09), 5 So.3d 839, 857. A trial court should enter a JNOV "only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions." *Id*. It is not sufficient that there is a preponderance of evidence for the mover. *Davis v. Wal-Mart Stores, Inc.*, 00-445 (La. 11/28/00), 774 So.2d 84. Rather, "[i]f there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied." *Id*. at 89. In considering this point, the trial court should not evaluate the credibility of the witnesses. *Id*. Finally, the trial court must resolve all reasonable inferences or factual questions in favor of the non-moving party. *Id*.

12

On review of a JNOV, an appellate court's inquiry is two-fold. *Davis*, 774 So.2d 84. First, we must determine whether the trial court erred in granting the JNOV. *Id.* Therefore, the appellate court considers "whether the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict." *Forbes*, 5 So.3d at 858. If the appellate court concludes that reasonable persons might reach a different conclusion, the trial court's granting of the motion was erroneous, and the jury verdict should be reinstated. *Id.* However, if the trial court applied the correct standard, the appellate court reviews the JNOV using the manifest error standard of review. *Davis*, 774 So.2d 84.

In reviewing the trial judge's decision to grant plaintiff's motion for JNOV on the issue of damages for loss of future earnings and loss of earning capacity damages, we conclude that the motion was properly granted. We have already detailed the medical testimony that established O'Hara's significant physical injuries, including a two-level lumbar fusion surgery. The medical testimony also established, although O'Hara could do some type of entry-level employment, his physical limitations would prevent him from returning to the type of employment he previously performed, thus impacting the amount of money he could earn. The trial court did find an award for loss of future earnings and loss of earning capacity was warranted, but the amount awarded was woefully inadequate considering the medical and expert testimony found in the record. The trial court, in his oral reasons to grant the JNOV in favor of O'Hara, specifically found to reach the amount it did, the "jury would have had to come to an assumption that he simply was not going to work again. . ." The trial court did not err in granting the JNOV in this regard.

Having determined that the trial judge properly granted the JNOV as to the jury's award of loss of future earning capacity and loss of earning capacity to

O'Hara, we now turn to a review of the award of the JNOV ($300,000.00) by the trial judge. The appellate court reviews the trial court's award of damages pursuant to the JNOV using the manifest error standard regarding the factual matters pertaining to the damages. *Davis*, 774 So.2d 84. Dr. Bettinger's calculations, including the one that factored in the felony arrest, were in excess of the trial court's award of $300,000.00. Thus, we find no manifest error in the trial court's award.

## IV.  *Damages Awarded Kirkland.*

Kirkland answered DOTD's appeal and assigns as error the amount of damages the jury awarded for her past and future wage loss, as well as loss of earning capacity. Kirkland was awarded $74,000.00 in past lost wages and $25,000.00 in future wage loss and loss of earning capacity.

Dr. Todd Drury testified that Kirkland will be unable to return to her job as a truck driver. Dr. Pat Culbertson, an economist, testified Kirkland was entitled to $91,882.00 in past wages. He based this on her past twenty-six weeks of wages earned as a truck driver. However, the record indicated Kirkland exhibited a wide disparity of earning ability during her brief career as a truck driver. She was not a salaried employee, but was at the mercy of the work that was available at the time. Thus, the jury's award of $74,000.00 in lost wages may well have reflected that testimony.

As to the loss of future earning capacity, Dr. Culbertson testified if Kirkland worked to age 62.3 earning the wages she had in the 26 weeks prior to the injury, she would have a loss of future earning capacity of approximately $64,000.00. If she worked to 66, the amount would be approximately $118,000.00. The jury was presented with evidence that Kirkland currently had a new job for which she earned wages. Although the wages she earned in her new employment were not as much as she earned as a truck driver, there was testimony that her wages could

14

increase with time. The jury was also informed of several extended periods of unemployment prior to Kirkland becoming a truck driver. This evidence may have influenced the jury's decision to award less than that forecast by Dr. Culbertson.

In its oral reasons for denying the JNOV as to Kirkland, the trial court stated the following:

> On the Kirkland motion [for JNOV], the economist made certain predictions, but those predictions were made – were based on assumptions which were explained to the jury. And a jury is not required to accept all of the assumptions and they're not required to accept an economist's speculations, which is pejorative term, but it is a speculative type figure. They're not required to accept them in total. The range which the jury decided to accept, the Court feels was in a – in the area of reasonableness. So the Court will deny the Motion for JNOV in that claim.

We find no error in the trial court's denial of the JNOV as to Kirkland. The evidence did not point so strongly in favor of her that reasonable persons could not reach different conclusions.

**DECREE**

For the foregoing reasons, the lower court's judgment is affirmed. All costs of this appeal are assessed to defendant-appellant, the State of Louisiana, through the Department of Transportation and Development.

**AFFIRMED.**